RODNEY DORMAN, APPELLANT, vs. THE CITY OF JACKSONVILLE, APPELLEE.

1. If the council of a municipal corporation act within the scope of their authority in the grading and improving of streets, they are not liable at common law to an action of trespass or case by the owner of an adjoining lot, who may be injured by such improvement.

2. Nor does a provision in the act of incorporation that the council must "make to the party injured by an improvement a just compensation," to be ascertained in such manner as is provided in the act, make the corporation liable to an action for such injury. There being no right of action at common law, the remedy created by the Legislature must be pursued.

3. A declaration alleging that a city council, " contriving and unjustly intending to injure, prejudice and aggrieve the plaintiff, and to incommode and annoy him in the occupation and enjoyment of his property," dug away his sidewalk, destroyed his shade trees, and created a nuisance in front of his premises, shows a cause of action at common law, the acts thus charged being in violation of law, and is not demurrable under the city charter which authorizes the grading and improvement of streets.

Appeal from the judgment of the Circuit Court for Duval county.

The case is stated in the opinion of the court.

*W. Call* for Appellant.

Acts done in pursuance of a power must carry into effect the object of the power. If the power be to *improve*, the act must not be to *injure*. The statute of Westminster gives a remedy by action on the case to all who are aggrieved by the neglect of any duty created by statute. 2 Inst., 486. Authority given by statute is conditional, that it shall be used for that purpose only for which the law allows it. Arch. N. P., 421. The Legislature cannot take property without making compensation. 2 S. C., 165, 473; 1 Bald., 230.

The second and most important error of the Circuit Court rests on this proposition: The charter gives the city of Jacksonville power to "improve the streets," and in terms imposes a condition or limitation upon the power, requiring it to make compensation to the party injured by assessment on those benefitted by an improvement, (Charter, Acts of 1841,) and the declaration specially declares in its count on the defendant's liability under this provision.

The case of Smith vs. The City of Washington, 20 How., is unlike the present case. The Supreme Court there held, first, that the power to "improve the streets" carried with it the power to alter the grades without reference to grades before established by the city authorities; second, that the consequential injuries or damages to property arising out of the *lawful* execution of this power were *injuria sine damnum*. The principles of that case do not affect the plaintiff's right of recovery.

Artificial persons, like corporations, can exercise no power except such as is conferred on them. 2 Cranch, 121; 5 Wheat., 326.

Where a charter grants certain things affecting the public, and requires performance of certain conditions, the cor-

poration is liable to an action on the case for the non-performance if, in consequence, an injury happens to an individual. Grant on Corporations, 163, (78 Law Library.)

A street is a public highway. The property in the soil of a highway is in the owner of the adjoining land, who may maintain trespass for digging the ground of the highway. 44 Law Library, 84–5. Grass, herbage, trees that are set out in the highway, belong to the adjoining proprietor. Ib., 86.

The term *nuisance*, as applied to real property, signifies anything done to the permanent hurt or annoyance of the lands, tenements or hereditaments of another. 2 Cobb's Law of Real Property, 1067.

Case is maintainable where the enjoyment of a right has been hindered. 1 Smith's Lead. Cases, p. 133, note; Ashley vs. White and Carpenter's case, ib.

Neither the ownership of the soil nor the easement is in the corporation, (2 Smith's Lead. Cases, 2 Vt., 480,) but the easement is for the benefit of the public.

The power to repair, alter or extend the streets or improve the easement is in derogation of a common law right, and must be construed in connection with it, and strictly. "So that anything which obstructs the way is a public nuisance," and gives trespass to the owner. 1 Conn., 132; Dovaston vs. Paine, *supra*.

"The King cannot confer a favor on one subject which occasions injury and loss to others." 3 Inst., 236; Broome's Leg. Max.

The questions presented by this record are :

1. Was the act done in pursuance of the power granted ?

2. Was it an injury to plaintiff's property ?

3. Is an improvement in the streets of Jacksonville, when it damages property, to be paid for ?

4. If it was not an "improvement," it was not in pursuance of "the power," and case lies.

If it *was* an improvement, compensation is required by

the terms of the charter as a condition, and case lies for non-performance of the condition.

The declaration concludes both these points.    It declares, first, it was not an improvement, neither an alteration of grade, nor other lawful act, but an excavation of plaintiff's sidewalk, a removal of the earth and carrying away his trees, which made a nuisance and disturbed his enjoyment of the easement of way, and damaged the value of his property. Second, it declares that said act was without the assessment or payment of damages as required by the charter.

On both these points the declaration makes out a case, and the demurrer admits the facts, and asserts as a consequence, that no action lies for a nuisance or for damages resulting from a departure from its chartered powers by a municipal corporation, an affirmation which is without reason or authority.

*J. P. Sanderson* for Appellee.

The questions of law presented by the demurrer are:

1. Whether the corporation, the defendants, have power under the charter to change the grade or alter Bay street, or acted wrongfully and unjustly in so doing.

2. If the act was lawful, were the defendants bound to compensate the plaintiff for the injurious consequences, if any, to his property?    And

3. Whether, if defendants are liable for the alleged injury, plaintiff can recover in this form of action, or is restricted to the remedy prescribed and provided in the charter.

The determination of these questions depends upon the proper construction of the charter.

The clause of the charter set forth in the declaration, and applicable to this case, is in 3d section, and is in the following language, viz:   " They shall especially have power to regulate, improve, alter and extend the streets, lanes, avenues and public squares, and to open new streets, and to cause encroachments, obstructions, decayed buildings and old

ruins to be removed, making the parties injured by any improvement a just compensation, and charging upon those benefitted a reasonable assessment, to be ascertained in such manner as shall be agreed upon by the parties, or by a jury of twelve men, to be organized in such manner as by ordinances the said council shall prescribe."

Under this grant of power no question can arise as to the authority of the defendants to alter or grade Bay street, and the act complained of was therefore lawfully done. The power to regulate, improve and extend the streets is the ordinary power usually confided to corporate bodies for municipal purposes, as in all other cities and towns the legal title to the public streets is vested in the sovereign as trustee for the public, and consequently can only be regulated by the Legislature or by such individuals or corporations as are authorized by the Legislature.

The power over the streets in the city of Jacksonville has, by the charter, been conferred upon the city council, as the representatives of the body corporate, to the same extent as that possessed by the Legislature itself.

The city can, therefore, be held liable for such damages only as the State would be if done by its authority—for example, in cases where private property is taken for public use.

In this case no private property has been appropriated to public use. The city has only used its own lawfully and is not liable for consequential damages. 1 Pick., 417; Redfield on Railways, p. 156, sec. 2, and notes.

This whole question is fully and elaborately discussed in the following cases: 20 How., 147, authorities cited in the above cases; 9 Watts, 282; 18 Penn., 187; 1 Am. Railway Cases, note to page 166.

The authorities cited clearly establish the first proposition.

Second—Are defendants bound to compensate the plaintiff for any injurious consequences to his property?

The defendants were in the exercise of a public function,

and are not liable to an action for damages consequentially resulting from the act done, unless done in a careless, unskillful and negligent manner.    What was done it was lawful to do, and if the plaintiff was injured or incommoded, it was *damnum absque injuria,* and gave no right of action against those who only exercise a legal power vested in them for the public convenience and welfare.    4 N. Y., (4 Con.,) 195 ; 2 Hill, 466 ; 3 Barb., 459 ; 17 Ind., 267.

The plaintiff does not charge that any of his land was taken (except what he had placed in the public street, which gave him no right,) from the street by defendants, but complains that the sand, &c., in the street along the front and in the vicinity of his lot was removed.    In doing this, unless the city council exceeded their jurisdiction, they are not responsible for collateral consequences.    The interest of individuals must give way to the accommodation of the public. 1 Denio, 597 ; 2 John., 283 ; 4 D. & E., 794 ; 6 Taunt., 29, E. L. R.; 1 American Railway Cases, note to pages 166-7-8-9-10.

But it is contended that the clause " making the parties injured by an improvement a just compensation, and charging upon those benefitted a reasonable assessment," limits and qualifies the power granted in all the cases previously enumerated, and in every case renders the defendants liable for compensation for any damage, whether mediate or consequential.

This, I contend, is not the reasonable, proper or legal construction to be given to the language used in the charter. The evident intention was to provide the means and manner for compensation in cases where injury might be done by the use or appropriation of private property, or interfere therewith by removal, &c., and not to *create* a *liability* in cases in which the law had not previously recognized such liability.

To recognize a liability in this, by giving the construction contended for by appellant to the clause of the charter under consideration, would be to overturn well established and

long settled principles. To sanction the principle that corporate bodies and individuals charged with the execution of public functions are responsible for consequential damage when acting within the scope of the power vested in them, and while performing those duties in a proper manner, would be to create an effectual bar to all works involving the convenience and welfare of the public. Such could never have been the intention of the Legislature.

A similar clause will be found in nearly every charter of this kind, and no case can be found giving the construction contended for by the appellant.

The decision in the case cited, viz : Smith vs. Coporation of Washington, 20 How., 147, fully sustains this construction. 1 Cranch, C. C., 98.

The act of Congress incorporating the city of Washington, Vol. 3, U. S. Stat. at Large, p. 587, sec. 8, contains a similar provision, and yet it was not considered by the court or counsel in that case as affording any remedy.

But should the court come to a different conclusion than the one contended for by appellee, then it is insisted

Third—That where there is a statutory remedy provided, that remedy *must* be *pursued*, and is exclusive. 8 Ohio, 543, cited in Abbott's Dig. on Corp., p. 500, sec. 186.

It is now fully settled that no action at common law can be maintained against parties executing a public trust under the authority of a statute for injuries which may be occasioned while in the proper exercise of the statutory power. 9 Conn., 436; 1 Am. R. R. Cases, note to page 170.

Therefore, if any right can be found by which the action can be sustained in this case, it must have been *created* by the compensation clause of the charter, and the plaintiff is restricted to the remedy therein prescribed.

This, then, was a new right, one which does not exist at common law, if any exists. When a statute gives a new right and prescribes a particular remedy, such remedy must be *strictly* pursued, and is *exclusive* of any other. 1 Mann.,

(Mich.,) 193; Redfield on Railways, 173–4–5, and notes; 13 Barb., 209; 1 Am. R. R. Cases, note to page 166, and remarks, &c., Lord Kenyon in note page 168.

The remedy pointed out by charter has not been pursued, but an action sounding in tort adopted, for this reason demurrer should be sustained. 4 Dunf. & East. Demurrer proper mode of raising question. 3 Brev., 396.

This is an action on the case, and the statute under which that suit was brought authorized the commission to make compensation, as in this, and Buller, J., says : " The question here is whether or not this action can be maintained, and I am clearly of the opinion that it cannot, because a particular remedy is pointed out by the act." See comments on this case in 1 Railway Cases, note to page 167, vol. 1 ; 1 Cr. C. C., 98.

If the compensation clause contained in the charter is to be construed, as contended for by appellant, to be a limitation, condition or qualification on the exercise of all the powers enumerated as granted by the charter, and thus create a liability where none existed before, it then becomes an affirmative statute, introductive of a new law. In that case, the remedy prescribed by the statute is the only one available for relief. Dwarris on Stat., 641.

RANDALL, C. J., delivered the opinion of the Court.

The appellant commenced an action against the appellee, and alleged in his declaration that he was the owner of a lot in the city of Jacksonville, (an incorporated city in this State,) on the north side of Bay street. That as such incorporated city, it has the power to regulate, improve, alter and extend the streets, to open new streets, and to cause encroachments, obstructions, &c., to be removed, " making the parties injured by an improvement a just compensation, and charging upon those benefitted a reasonable assessment, to be ascertained in such manner as shall be agreed upon by the parties or by a jury of twelve men, to be organized in such

546 SUPREME COURT.

Dorman vs. The City of Jacksonville—Opinion of Court.

manner as by ordinance the city council may provide." This power is conferred by the city charter. The declaration alleges further that " the defendant, well knowing the premises, but contriving and wrongfully and unjustly intending to injure, prejudice and aggrieve the plaintiff, and to incommode and annoy him in the possession, use, occupation and enjoyment of the said lot, with the appurtenances," did, on the 1st of July, 1866, dig up and carry away from Bay street, along the front of said lot, large quantities of sand, earth and gravel, some of which the plaintiff had purchased and spread there for a sidewalk in front of the lot, digging away, tearing up and undermining the sidewalk of the plaintiff, and also digging away the earth from the shade trees and carrying it off, depositing it in the street in front of the property of others, digging up and carrying away the said shade trees, which were ornamental, useful and valuable, and a necessary protection against fire, leaving the street and sidewalk in a ragged and incomplete condition, exposing the same and the lot to damage by washing and undermining, making the lot and the buildings thereon difficult and inconvenient of access, and making it difficult to cross the street from his premises, and causing the water to stand in the street in front of his property to his great injury, making him no compensation for said injury, &c.

To this declaration the defendant interposed a general demurrer. The court sustained the demurrer, and the plaintiff appealed.

The appellant assigns for error that the court erred in sustaining the demurrer and giving judgment against him.

I do not understand that the plaintiff claims that the defendant is liable in this action, if the acts complained of were done in pursuance of and in conformity to the provisions and the power granted by the act of the Legislature authorizing the city council to grade and improve the streets, but that if the acts done were not in pursuance of this power, or the thing accomplished was not authorized to be done, the action

lies, and the judgment of the Circuit Court was erroneous. In this proposition the court must concur, and also that if the act done by the defendant was in pursuance and conformity to this power of the city council, and in consequence thereof the plaintiff sustained damages, he is entitled to compensation by the *terms of the charter*.

But it is insisted by the appellant that the authority to grade the street in front of the plaintiff's premises is limited and *conditioned* upon making compensation for the injury, if any injury follows, and that as the defendant, by demurring, admits the premises alleged, and it does not appear that such compensation has been made, the defendant is liable in this action. To this conclusion I cannot agree.

By the terms of the city charter, the making compensation for an incidental injury, occasioned by making a public improvement, as by grading or leveling a street, does not precede the making of the improvement and causing the injury. No injury is sustained until the "improvement" is effected or commenced. There can be no "compensation" due until, the improvement being made, it is ascertained that there is an injury, and the extent of it to be compensated. Whether there will be an injury to a lot in a city by the leveling of the street in front of it, by digging it down or filling it up, can scarcely be determined until it be ascertained whether the lot is made more or less valuable by the grading or leveling. The particular location and the surroundings of the lot and of adjoining property, the making it more accessible, or the placing of impediments and permanent obstructions in the way, making it inconvenient of access, creating a nuisance in the vicinity of it, and numerous other incidents may be taken into the account in determining whether the property is injured or benefitted, and these cannot always be calculated upon until the work is done or in progress. And most assuredly no action can be maintained, either for a trespass or for compensation for an injury, until the trespass is committed or the injury sustained. It seems clear that the

548 SUPREME COURT.

Dorman vs. The City of Jacksonville—Opinion of Court.

"just compensation" mentioned in the charter cannot be required to be made before the damage is sustained.

If the opposite construction should prevail, *it might be* insisted, by the same logic, that the city might, *in advance,* " charge a reasonable assessment upon those benefitted " by the improvement, the language conferring the authority to make compensation and to change an assessment for benefits being in the same paragraph and part of the same grant of power, the injuries and the benefits "to be ascertained in such manner as shall be agreed upon by the parties or by a jury " to be provided by ordinance.

I cannot, therefore, consider that the plaintiff is entitled to recover upon the ground that compensation was not made as a *condition* upon which the city is authorized to act in making improvements upon the streets, or, in other words, that the action of the city was unlawful or unauthorized because compensation was not made. In this I do not confound the taking of private property for public purposes with the exercise of municipal discretion in improving a street already dedicated to, or the permanent use of which, as an easement, has been paid for by the public, there being a vast difference between the invasion of private property, disturbing the exclusive right of possession of the owner, and the improvement of public highways, which are properly under the control of the public for legitimate purposes, notwithstanding that the fee of the soil remains in the original owner or his grantees.

The question then arises, whether an action at law can be maintained by the owner of a city lot against the city or its employees for the grading of streets adjoining it, irrespective of any provision of law providing compensation for injuries sustained by the adjoining owner. The case of Callender vs. Marsh, 1 Pickering, 418, is a leading and standard case in this country, and has been, it is understood, cited and approved by the Supreme Court of the United States, and by the courts in every State but one in the Union. The court

in that case say that there has been no construction given to the provision (relating to compensation for private property taken for public use,) which can extend the benefit of it to the case of one who suffers an indirect and consequential injury or expense by the right use of property, the *use* of which already belongs to the public. It has ever been confined in judicial application to the case of property taken and appropriated by the government. The street " being established, although the title in the soil remained in him from whom it was taken, yet the public acquired the right, not only to pass over the surface in the state it was in when first made into a street, but the right also to repair and amend the street, and for this purpose to dig down and remove the soil sufficiently to make the passage safe and convenient. Those who purchase house lots bordering upon streets, are supposed to calculate the chance of such elevations and reductions as the increasing population of a city may require in order to render the passage to and from the several parts of it safe and convenient, and as their purchase is always voluntary, they may indemnify themselves in the price of the lot which they buy, or take the chance of future improvements as they shall see fit. * * Every one who purchases a lot upon the summit or decline of a hill, is pre_ sumed to foresee the changes which public necessity or con_ venience may require, and avoid or provide against a loss. * * * That it might be proper for the Legislature, by some general act, to provide that losses of the kind complained of in this suit should be compensated by the town or city within which improvements may be made for the public good, or by the owners of land which may be particularly benefitted, is not for us to deny ; but without such legislative provision we have no authority on the subject, it being clear that by the common law, as well as by our statutes, the defendant in this action is not liable. In no case can a person be liable to an action as for a *tort*, for an act which he is authorized by law to do." Thurston vs. Hancock, 12

Mass., 220, and Parton vs. Holland, 17 Johnson, 100, are referred to as fully sustaining this position. The action referred to was trespass for digging down the street by the plaintiff's house in Boston and taking away the earth so as to endanger the falling of the walls, in consequence of which he was obliged to build new walls at great expense to preserve his property and render it easy of access as it was before, and this after the house had been standing for twenty years.

The Supreme Court of the United States in Smith vs. The Corporation of Washington, 20 How., 135, where similar injuries were alleged to have occurred in consequence of the cutting down shade trees, removing a wall and the pavement, digging down the street and thereby obstructing the ingress and egress, injuring the value of the property and compelling the plaintiff to pay large sums of money to enable her to use and occupy her house, quoted approvingly the decision in Callender vs. Marsh. The case had been tried by a jury, the court below instructing them that " the defendants cannot be responsible in damages in this action, unless from the evidence the jury shall find that said change was made wantonly, wilfully and maliciously." The declarations alleged that the " defendants unlawfully, wrongfully and injuriously" cut down the shade trees, &c. The questions arising and which were considered by the Supreme Court were " whether the corporation *had power* to change the grade of the street, or acted unlawfully and wrongfully in so doing ;" and " if the act was lawful, were the defendants bound to compensate the plaintiff for the injurious consequences to her property ?" (The first of these questions does not arise in the present case, the power to improve or alter the streets being too plain for question, by the terms of the city charter.)

The court says that the defendants " having performed the trust confided to them by law, according to the best of their judgment and discretion, without exceeding the jurisdiction

and authority vested in them as agents of the public, and on land dedicated to public use for the purposes of a highway, they have not acted unlawfully or wrongfully as charged in the declaration.   They have not trespassed on the plaintiff's property, nor created a nuisance injurious to it, and are consequently not liable to damages where they have committed no wrong, but have fulfilled a duty imposed on them by law, as agents of the public.   The plaintiff may have suffered inconvenience and been put to expense in consequence of such action ; yet, as the act of defendant is not unlawful or wrongful, they are not bound to make any recompense.   It is what the law styles ' *damnum absque injuria.*'   Private interests must yield to public accommodation ; one cannot build his house on the top of a hill in the midst of a city, and require the grade of the street to conform to his convenience at the expense of that of the public."   The cases of Callender vs. Marsh, 1 Pick., 417, Green vs. Reading, 9 Watts, 282, O'Connor vs. Pittsburg, 18 Penn. Rep., 187, are quoted and approved as leading and authoritative cases, and the views expressed are considered as the settled law in this country.

A distinction is attempted to be drawn between the case at bar and that of the corporation of Washington, because of the peculiar nature of the grant of the land covered by the city.   It was conveyed to trustees to be laid out as a federal city, with such streets, lanes, avenues, parks, &c., as should be approved by the President, and so the soil in the streets belonged to the city in fee.   Without entering into an argument upn this suggestion, it may be remarked that there is nothing before us to show by what tenure the city of Jacksonville claims the control of the soil in the streets, and if there had been, we cannot see that it would change the *status* of the parties, the city having in any event full power to make and change the grade of the streets for the convenience of travel and business.   Nor is the decision of the Supreme Court of the United States in the case referred to

controlled by the character of the title of the city to the soil in the streets.

The conclusion is, then, that if the declaration alleged that the city council acted within the scope of their legitimate powers, they would not be liable in this form of action.

That the city council must make " to the parties injured by an improvement a just compensation," imposes upon it the duty to hear and consider claims to such compensation, and make provision therefor in the manner provided by law. If the city council neglect their duty in this regard, they are liable to such measures as may be taken against them for a refusal to comply with a requirement of the law. The proposition that where a remedy is created by statute where none before existed must be pursued, is too well established to require argument. The authorities cited upon this point are ample and pertinent.

But the conclusion that the city is not liable to this action for damages sustained by parties in consequence of making public improvements under authority of law, does not dispose of this case.

The question properly before the court is upon the demurrer to this declaration. It alleges that the defendant, " contriving and unjustly *intending to injure, prejudice and aggrieve the plaintiff*, and to incommode and annoy him," dug away his sidewalk, destroyed his shade trees, and created a nuisance in the street in front of his premises. More apt language to allege a willful violation of law, and the doing of malicious mischief and injury to the plaintiff and his property, can scarcely be conceived. The defendant takes no issue upon this, but demurs and says that no cause of action is stated, and though the allegations be admitted, the plaintiff if not entitled to recover.

This is admitting too much. In Smith vs. Corporation of Washington, the court premises that the gravamen of that case was not a trespass on the property of the plaintiff, or the taking down a wall or removing shade trees thereon,

nor the erection of a nuisance on the public highway, nor a willful, malicious or oppressive abuse of authority in order to injure the plaintiff. The jury had found the contrary, and the question was whether the city was liable for the consequences of *lawful acts*.

The plaintiff here has stated a serious cause of action, a violation of law by the defendants, whereby he has suffered. The circuit judge doubtless decided the question upon the demurrer without reference to the language of the declaration introducing the charges brought against the defendant; but as our attention is called to the language of the pleading, we must pass upon it as it is written, and it follows that the judgment of the Circuit Court must be reversed.