58 So.2d 701 (1952)
NATURAL GAS & APPLIANCE CO., Inc.,
v.
MARION COUNTY.
Supreme Court of Florida, Special Division A.
April 29, 1952.
Rehearing Denied May 28, 1952.
Ellis & Whittle, Orlando, and Green & Bryant, Ocala, for appellant.
Wallace E. Sturgis, Ocala, for appellee.
MATHEWS, Justice.
This is an appeal in an eminent domain suit whereby Marion County brought proceedings to acquire the necessary rights-of-way, drainage ditches and borrow pits for improvements of state roads numbered 200 and 25. The appellant had a lease upon a piece of land and a storage tank thereon. A stipulation was entered into as to the value of the land to be taken and the value of the leasehold interest of the appellant, leaving to be determined by the jury only the question of special damages, if any, to the appellant by reason of the taking of this property. Much testimony was received *702 in evidence about the expansion of the appellant's business and the dangers incident to the appellant's business. Even the cost of moving tanks, should the same ever become necessary, was received in evidence. There was much speculative testimony as to the expansion of appellant's business and the possible necessity of placing tanks on other property by reason of this expansion. There was also substantial testimony that it would not be necessary to remove the tanks and that additional tanks could be placed upon the remaining property.
The question of special damages to the remainder of the property occupied by the appellant, as lessee, was fairly submitted to the jury under appropriate instructions from the Court. They rendered a verdict in which they fixed the amount of damages to the appellant for the land taken and special damages to the remainder. A motion for a new trial was made and was denied by the Circuit Judge.
There was sufficient evidence to sustain the verdict. It was reviewed by the trial judge and he refused to set the verdict aside and grant a new trial. The presumption here is that the judgment of the lower court is correct. Ball v. Ball, 160 Fla. 601, 36 So.2d 172; Schroeder v. Annenberg, 148 Fla. 513, 4 So.2d 866; LaBarbara v. State, 150 Fla. 675, 8 So.2d 662; Usher Garage & Taxi Service v. Zander, Fla., 40 So.2d 575, 576.
The appellant also assigns as error the refusal of the lower court to permit testimony by an insurance agent concerning the necessity of obtaining additional hazard insurance or public liability insurance or to post a bond to protect the public and the costs thereof by reason of the improvement of these roads. It was not shown that this witness was competent to testify or to give his opinion as to the necessity of a removal of appellant's place of business to another location. There was an abundance of testimony from others about the necessity or desirability of removal. The only matters which the record shows this insurance agent was qualified to express an opinion about was insurance and the premiums. There was no error in sustaining objections to such testimony from this insurance agent.
In this case a change in location and a change in grade was planned in order that the road might be widened and a grade-crossing eliminated by the construction of an underpass. Nichols on Eminent Domain, page 363, Subsection (1) of Sec. 6.4441; Dorman v. Jacksonville, 13 Fla. 538, 7 Am. Reports 253; and Selden v. Jacksonville, 28 Fla. 558, 10 So. 457, 14 L.R.A. 370.
In the case of Dorman v. Jacksonville, supra, this Court held that the City had the right to change the grade and there could be no damage to an abutting owner by reason of such changing grade if the change was made in good faith.
In the case of Bowden v. City of Jacksonville, 52 Fla. 216, 42 So. 394, 396, the viaduct ran parallel with Bowden's lot. He obtained from the City Engineer the grade of the viaduct so that he could construct a building on his lot to be in harmony and in accordance with the viaduct. After he had obtained this information, he erected his building costing $40,000. Thereafter the city demolished the existing viaduct and reconstructed or re-built a new viaduct running over the same territory which was higher than the old viaduct, and made Bowden's building 18 inches below the passageway of the new viaduct. In that case this Court said:
"As incidents to the ownership of a lot bordering on a public street, there are, in addition to the right of passage over the street in common with the public, the private property right of egress and ingress from and to the lot by way of the street and the private property right of light and air which the street affords. The owner of such a lot takes and holds it subject to the right of the state, or any duly authorized governmental agency acting for it, to improve the street for public use by altering the grade of the street, by the erection of a viaduct thereon, or otherwise, for street purposes; and, in the absence of legislation or a valid contract, the owner has no right of action against a city authorized by law to grade and improve the street for injury *703 to the lot or property thereon, or for the impairment or destruction of the incidental rights of ingress and egress and of light and air which the street affords, because of changes made by the city in the grade of such street by building or rebuilding a viaduct thereon for the improvement of such street, even though such changes in the grade prove inconvenient or expensive to the lot owner in the use of his property, where there is no diversion of the street from its proper street purposes, and where the injury to the lot or property thereon or the impairment or destruction of the incidental rights is a mere consequence from the lawful use or improvement of the street as a highway, and where there is no physical invasion of or trespass upon the lot or property, and no malice, negligence, or unskillfulness in the use or improvement of the street for street purposes to the injury of the lot owner. See Dorman v. State, 13 Fla. 538; Selden v. City of Jacksonville, 28 Fla. 558, 10 So. 457."
In the present case the appellant obtained a lease on a piece of land accessible to a railroad and also accessible to one of the heaviest travelled roads in the state. This land is in a populous section of Ocala, which is a thriving, progressive and growing city. It evidently established its business on this location and in this city because the location had access to a railroad and access to a state road. The cost of doing business may change with changing economical conditions as well as altering or changing streets and roads.
Increase in the number of automobiles, in population, and in traffic may increase the cost of doing business and may also increase the volume of business and the net profits of business. If a concern desires to take out more public liability insurance for its own protection by reason of increased hazards due to increasing automobiles, population and traffic conditions, such concern has the privilege of doing so, but it cannot pass the cost onto the public in an eminent domain proceeding. Construction of roads and bridges and the changing of locations and grades should be anticipated in a growing city, county, or state. Roads and bridges have contributed materially to the increase in population and in the progress and development of the state.
The appellant may reap the benefits from an increase in population, growth and development, but it cannot require the public to pay for possible increase of insurance, or premiums, which it may be put to, or deem desirable, in the future in reaping such benefits.
Affirmed.
SEBRING, C.J., and CHAPMAN and THOMAS, JJ., concur.