MATHEWS, Chief Justice
(dissenting).
This is a petition for writ of certiorari to review an order of the Chancellor denying the motion of the petitioners for a summary judgment.
The order sought to be reviewed, dated November 2, 1954, contained the following:
“The Court is of the opinion that from the averments of the Bill of Complaint, the construction of the project will materially damage only the consequential rights of the Plaintiff to ingress, egress, light, air, and view, but under circumstances justifying the payment of appropriate compensation to plaintiff; thus the Court is of the opinion that the Bill has equity and the various motions for a summary judgment should be denied.” (Emphasis supplied.)
The statement of the Chancellor that the project will damage only the consequential rights of the plaintiff * * * “but under circumstances justifying the payment of appropriate compensation to plaintiff” presents an immaterial issue and is not justified by the law or the facts. The overpass is to he constructed for the safety of the travel-ling public. There is no physical invasion or trespass upon plaintiff’s property. There is no contention or allegation that the overpass is to be constructed due to malice or in a negligent or unskillful manner. There is no circumstance alleged or shown which justifies the payment of compensation to the plaintiff. See Bowden v. City of Jacksonville, 52 Fla. 216, 42 So. 394.
The respondents filed a bill of complaint and obtained a temporary injunction on November 10, 1953, which contained the following:
“ * * * be and are hereby enjoined and proceeding further with the construction and laying of additional railroad tracks on or traversing U. S. Highway 98 (State Road 30) adjacent *701 to the plaintiff’s property and from constructing any bridge, trestle, overpass or viaduct over said Highway at. any point where said Highway abutts upon the plaintiff’s property,1 and from in any way raising or changing the elevation of said Highway at any point where the said Highway is adjacent to plaintiffs’ property or abutts thereon,” (Emphasis supplied.)
The real basis of. the injunction and the relief sought by respondents was to have a court of equity determine: (1) that they were entitled to damages, (2) to assess the amount of damages, and (3) to enforce the payment of damages under the assertion that respondents would be damaged by reason of a change in grade of a highway already established by the construction of an overpass over tracks of the railroad company, even though no land of the respondents was taken and the overpass would not abut upon any land of the respondents.
The highway in question was designated as a state highway by Chapter 10269, Acts of 1925. The record does not disclose when the respondents acquired their land.
F.S. § 341.64, F.S.A. designated city and town streets and roads, or portions thereof, viaducts and bridges, that constitute the route of connection between or extension of state roads in the state highway system, as municipal connecting link roads and empowered, directed and required the state road department to maintain and repair the same. Much testimony was taken in an attempt to show The Apalachicola-Northern Railroad and The St. Joe Paper Company was one and the same corporation, because The St. Joe Paper Company owned all the stock of the railroad company except ten shares. This appears to be a matter of no consequence. To say the least, the paper company could not exist without the services of the railroad company, and an expansion and increase in capacity of the paper company required an expansion and increase in capacity of the railroad company. The bill of complaint alleged that persons going to and from the paper mill constitutes approximately ninety-five percent of the traffic along the highway in question and in front pf the respondents’ property.
At the time this controversy arose there were two tracks-crossing the highway leading into the paper mill property. A permit had been granted by the State Road Department for additional tracks. The existing tracks and the proposed tracks crossing the highway did not touch of affect the respondents’ real estate. Respondents allege that they gave warning from time to time that by permitting additional tracks the necessity for an overpass might be created, and the overpass would affect the respondents’ property and result in damage to them.
In his order denying the motion of petitioners for summary final decree, the Chancellor found that the overpass would not take any of the land of the respondents and that 18 feet of the street remained between the property of the respondents and the proposed overpass which constituted 18 feet of paved street and then stated:
“Ordered, Adjudged, and Decreed that it is undisputed from the record that the proposed project does not take any of the Plaintiffs’ land or premises, and it further appears undisputed from the exhibits on file that eighteen (18) feet remains between Plaintiffs’ property and the proposed overpass and the present pavement on said eighteen (18) feet will remain undisturbed.” (Emphasis supplied.)
The case of Tampa & Gulf Coast Railroad Co. v. Mulhern, 73 Fla. 146, 74 So. 297, was an action of an abutting lot owner for damages because of the construction of a railroad in the street upon which his lot fronted. The suit was brought in equity. There was a positive allegation that a judgment would not be a complete remedy because of the insolvency of the defendant. The defendant filed a demurrer. This Court held that the demurrer should have been sustained because the action was for damages and injury to an abutting property owner arising from tort and that the remedy was on the law side of the court. The plaintiff sought to bring the suit in equity *702 under the same theory which was sustained in the case of Florida Southern R. Co. v. Hill, 40 Fla. 1, 23 So. 566, 74 Am.St.Rep. 124. The theory in the Hill case was that the property of an abutting property owner was taken for a public use without compensation and that he could waive the trespass and elect to regard the taking under eminent domain and claim just compensation therefor. To state the matter in simple terms, in the Hill case and similar cases, there was involved the direct taking of private property and there was an implied contract which could be enforced by as-sumpsit or the land owner also had the right to bring his suit in equity on the theory of enforcing a vendor’s lien. We have no such state of facts in the case before the Court. Not one foot of the respondents’ land has been taken.
The respondents in this case do not claim that the mere granting of permits for additional tracks causes them any damages but that the damages will accrue because of a change in grade. This controversy has been going on for some time with the State Road Department under different administrations. The record shows considerable negotiations between the petitioners herein and the respondents which resulted in a letter from Richard H. Simpson, Chairman of the State Road Department, to Claude Pepper, Attorney for the respondents, reading as follows :
“This will confirm our personal conversation in regard to the proposed overpass at Port St. Joe. We have given the railroad company their authority to put in additional tracks across the highway adjacent to the St. Joe Paper Company. This, of course, is the first step toward the erection of the overpass.
“If you need additional information, please feel free to call on us.”
and telegram from Sam P. Turnbull, State Highway Engineer, to Joe L. Sharit, Vice-President of Apalachicola-Northern Railroad, reading as follows:
“This will be your authority to begin construction of 12 tracks across State Road 30 in accordance with your sketches submitted and your letter dated July 28.”
The record shows that the cost for the overpass was included in the State Road Department budget for the year 1953, which was adopted by the entire Board. The record also shows a resolution with reference to this project was unanimously adopted by the Board, and among other things, contained the following:
“Whereas the traffic on State Road 30 (U. S. 98) at Port St. Joe has been steadily increasing for several years and now exceeds 3600 cars per day; and,
“Whereas the St. Joe Paper Company has expanded its plant at Port St. Joe to several times its former capacity ; and,
“Whereas the railroad tracks supplying the plant cross State Road 30 just north of Port St. Joe; and,
“Whereas the railroad traffic is increasing markedly due to the expansion; and,
“Whereas, this crossing has long been hazardous and dangerous to the travelling public; and,
“Whereas M. G. Lewis and Sons Garage is located adjacent to the crossing and a temporary injunction has been issued against the construction of an overpass of the railroad tracks by the highway;
“Now Therefore Be It Resolved that the construction of an overpass of the Apalachicola-Northern Railroad Tracks North of Pensacola is necessary to the travelling public to eliminate a dangerous and hazardous crossing; and be it
“Further Resolved that the attorneys are directed to bring the pending suit to as rapid a conclusion as is possible; and be it
“Further Resolved that if the said M. G. Lewis and Sons Garage are de *703 termined to have any rights which would be taken by said construction, that the attorneys acquire, by gift, purchase or condemnation, and rights so that the construction of the overpass be no longer delayed.”
The record shows that there is pending a suit between the parties with reference to damages, if any, to respondents and by order of the Chancellor in this cause, that this proceeding did not prevent such suit.
F.S. § 341.24, F.S.A. gives the State Road Department wide discretionary powers with reference to maintaining state roads and projects and to make them safe for use. Under the facts shown by the record in this case there was no abuse of discretion in granting authority to lay additional tracks across the highway in question. There was no abuse in discretion of the State Road Department taking necessary steps to change the grade of the existing road or a portion thereof and to construct a viaduct, or overpass, over dangerous tracks for the safety of the travelling public.
This case is controlled by the cases of Selden v. City of Jacksonville, 28 Fla. 558, 10 So. 457, 14 L.R.A. 370, 29 Am.St.Rep. 278; Dorman v. City of Jacksonville, 13 Fla. 538, 7 Am.Rep. 253; and Bowden v. City of Jacksonville, 52 Fla. 216, 42 So. 394, 396. The right of ingress and egress is not involved in this case. The property of respondents abuts upon the street which has 18 feet of pavement between the lands of the respondent and the overpass. All of the traffic going to or from the paper mill may still pass respondents’ property. There is no question of malice, negligence or un-skillfulness in the use or improvement of the street in question. No property of respondents’ is entered or taken. As shown by this record, the overpass is to be constructed for the safety of the travelling public. In the case of Bowden v. City of Jacksonville, supra, this Court said: “As incidents to the ownership of a lot bordering on a public street, there are, in addition to the right of passage over the street in common with the public, the private property right of egress and ingress from and to the lot by way of the street and the private property right of light and air which the street affords. The owner of such a lot takes and holds it subject to the right of the state, or any duly authorized governmental agency acting for it, to improve the street for public use by altering the grade of the street, by the erection of a viaduct thereon, or otherwise, for street purposes; and, in the absence of legislation or a valid contract the owner has no right of action against a city authorized by law to grade and improve the street for injury to the lot or property thereon, or for the impairment or destruction of the incidental rights of ingress and egress and of light and air which the street affords, because of changes made by the city in the grade of such street by building or rebuilding a viaduct thereon for the improvement of such street, even though such changes in the grade prove inconvenient or expensive to the lot owner in the use of his property, where there is no diversion of the street from its proper street purposes, and where the injury to the lot or property thereon or the impairment or destruction of the incidental rights is a mere consequence from the lawful use or improvement of the street as a highway, and where there is no physical invasion of or trespass upon the lot or property, and no malice, negligence, or unskillfulness in the use or improvement of the street for street purposes to the injury of the lot owner. See Dorman v. City of Jacksonville, 13 Fla. 538; Selden v. City of Jacksonville, 28 Fla. 558, 10 So. 457.”
In the case of Natural Gas & Appliance Co. v. Marion County, Fla., 58 So.2d 701, 703, we quoted with approval from the Bowden case and then said:
“ * * * . Construction of roads and bridges and the changing of locations and grades should be anticipated in a growing city, county, or state. Roads and bridges have contributed materially to the increase in population and in the progress and development of the state.
“The appellant may reap the benefits from an increase in population, growth and development, but it cannot require *704 the public to pay for possible increase of insurance, or premiums, which it may be put to, or deem desirable, in the future in reaping such benefits.”
See Duval Engineering & Contracting Co. v. Sales, Fla., 77 So.2d 431.
While it is possible that the construction of the overpass may damage the consequential rights of the respondents, a court of equity is not the proper forum to establish and enforce such damages.
In the case now before the court, a viaduct, or an overpass, is to be constructed. All of the existing street is not to be utilized. There is no contention that there is any physical invasion or trespass upon private property. There is no allegation of malice, negligence, or unskillfulness in the contemplated use or improvement of the street for street purposes. Without a direct and positive allegation of invasion of or trespass upon private property, or of malice, negligence or unskillfulness in the construction of the contemplated improvements there can be no recovery. There is no genuine dispute as to any material issue of fact. There is no reason for the further delay in the construction of an improvement for the safety of the travelling public in order to take further testimony concerning an immaterial issue.
Highways and railroads are essential for the transportation of property and people. The mere building of a highway is not complete unless safety and dangerous hazards are considered. We cannot escape the fact that one of the great hazards to human life is the grade crossing, where highways and railroads intersect. In the construction of modern highways, one of the greatest duties placed upon road building authorities is to conserve human life by elimination, as far as possible, of dangerous and hazardous conditions.
The ti'emendous increase in motor vehicular traffic on the highway in question has increased the danger to human life at this grade crossing, which has increased the responsibility of public officials to adopt safe measures to preserve life, limb and property of the travelling public.
The petition for writ of certiorari should be granted, the order denying the petitioners’ motion for the summary judgment or decree should be quashed, and the Chancellor ordered to enter a proper decree granting the motion for summary judgment or decree, and dismissing the bill of complaint.
SEBRING and ROBERTS, JJ., concur.