PALM BEACH COUNTY, A. A. POSTON, Chairman, and DOYLE W. CROCKER, JOHN PRINGLE, C. Y. BYRD and C. J. MEERDINK, as and constituting the Board of County Commissioners of Palm Beach County, v. SOUTH FLORIDA CONSERVANCY DISTRICT, a public quasi-Florida corporation, and EVERGLADES DRAINAGE DISTRICT, a public quasi-Florida corporation.

170 So. 630.
Opinion Filed November 13, 1936.

[redacted]

[redacted]

*Harry A. Johnston,* for Appellants;

*Bryant & Pittman, F. E. Bryant, Evans, Mershon & Sawyer, Herbert S. Sawyer* and *Thos. McE. Johnston,* for Appellees.

Davis, J.—The Board of Supervisors of South Florida Conservancy District, in their official capacity, acting with the sanction and approval of the Board of Commissioners of Everglades Drainage District, having determined that it was necessary, in order to effect proper drainage and reclamation, that the levee along the north side of Hillsborough Canal in Palm Beach County be raised to a height of 22½ feet above sea level, thereupon embarked upon a program of work to accomplish its determination. As soon as the work was begun the Board of County Commissioners of Palm Beach County, claiming a right of way for a county road along the levee proposed to be so raised, and that the right of said Board of County Commissioners to the use of said levee for county road purposes was superior to the right of the Board of Supervisors of South Florida Conservancy District to the use of said levee and right of way for drainage purposes, caused the arrest of two officers of the said South Florida Conservancy District upon warrants charging them with obstructing and destroying the county highway that had been established or was being maintained by Palm Beach County atop the drainage levee along the north side of the Hillsborough Canal.

The Circuit Court in these proceedings instituted by the South Florida Conservancy District against the Palm Beach County Commissioners, held the equities to be with South Florida Conservancy District and entered its final decree perpetually enjoining the defendants (appellants here) from molesting, disturbing or otherwise interfering with plaintiffs (appellees here), their agents and servants, in the prosecution of work in connection with the levee or dykes along

the northeast bank of the Hillsborough Canal. An appeal from that decree brings the controversy to this Court.

In deciding the case, the Chancellor who entered the decree appealed from, found and recited as a basis therefor the following facts and conclusions of law:

"While this suit is between drainage officials, as plaintiffs, against road officials, as defendants, it is in fact brought about by a conflict between water control and transportation, insofar as affects the reclamation part of the Everglades.

"It appears that in 1917 a levee or dyke was built on the Northeast bank of the Hillsborough Canal, when the Canal was constructed: During or before 1921, the levee or dyke was leveled to some extent. From that time, until the present time, it has been used as a public road.

"In 1921 proceedings were instituted to establish the road as a County road. These proceedings were perfected in 1927. Since 1927, the defendants have maintained the road as a County road. It appears that its maintenance consisted principally in leveling and grading the road. No great expense seems to have been involved on the part of the defendants in the construction and maintenance of the road.

"Plaintiffs, in order to carry out the reclamation project, now believe it necessary to raise the level of the levee or dyke. It is contended that, as a result of natural forces and the use of the levee or dyke as a road, its efficiency has decreased to such an extent that it must be considerably raised, enlarged and repaired. The plaintiffs contend that when the levee or dyke has been repaired it must be used exclusively for a levee or dyke, and that use of it as a road in due time destroys its efficiency. The defendants seek to maintain it as a road.

"It seems clear that plaintiffs must drain and reclaim the lands for without that, and water control, the land is of little use. Without transportation, the land is also valueless.

"Under the peculiar facts of this case there seems to be no way of reconciling the conflicting demands of water control and transportation, so that each may use the particular narrow strip of land in question.

"The duty upon the plaintiffs seems to be prior and paramount. Under the facts here, water control seems to be prior and paramount over transportation. Hence, the land in question, should be used for a levee or dyke, rather than a road.

"It is to be noted, that the levee or dyke can be constructed in no other place. For aught that appears, some other equally desirable location for a road may be provided in place of the one now used.

"This case does not present an instance where drainage officials seek to appropriate and destroy transportation facilities originally conceived and constructed as such, either with, or without, great expense to the officials charged with the construction and maintenance of roads. Nor does it appear that the need for water control should always prevail over the need for transportation."

The land involved is a strip of land consisting of a right of way a mile long and 130 feet wide from the center line of the Hillsborough Canal, less the canal itself. The strip in controversy is on the north bank of the canal just east of the Town of Belle Glade and consists in part of a levee built as a drainage structure in 1917 by the Everglades Drainage District and used since that time for drainage purposes by the South Florida Conservancy District as a part of the drainage works incident to the reclamation of

the Everglades. In 1921 people started driving over the top of the levee and in that same year proceedings were commenced in accordance with the statute (Sections 2440-2441 C. G. L., 1592-1593 R. G. S.) for the laying out of the levee roadway as a county road. The county first worked the road as a putative county road in 1927, but since that time has improved and maintained it for road purposes as a part of its county road system. The county's claim to the use of the top of the levee in question for road purposes is founded on the "road laying out" proceedings begun in 1921 in accordance with Sections 2440-2441 C. G. L., *supra*, as supplemented by Chapter 17307, Acts 1935, Laws of Florida, Section 2452 (1) C. G. L. Supplement.

The latter statute (the 1935 Act) provides as follows:

"Section 1. That whenever any road or portion thereof heretofore constructed by any of the several counties of this State or by the State Road Department of Florida, shall have been maintained, kept in repair or worked continuously and uninterruptedly for a period of four years by any such county or by said department, or by either or both, such road shall be deemed to be dedicated to the public to the extent in width which has been actually maintained, kept in repair and worked for the period aforesaid, whether the same has ever been formally established as a public highway or not, and such dedication shall be conclusively presumed to vest in the particular county in which the road is located or situated, if it be a county highway, or in the State Road Department of Florida, if it be a State Road, all right, title, easements and appurtenances therein and thereto to the extent in width that has been maintained, kept in repair and worked as aforesaid, whether there be any record of conveyance, dedication or appropriation to the public use or not; provided, however, that any person,

firm or corporation having or claiming any interest in and to any of the property affected by this Act shall have and is hereby allowed a period of one year from the date of the final passage hereof to file a claim with the particular governing authority assuming jurisdiction over such property, for any damages which might have accrued to such person, firm or corporation by virtue of the occupancy of such property by such particular governing authority. * * *

"Section 3. The words or terms 'road,' 'public road' or 'highway' as used in this Act shall be deemed to include the roadbed, right of way and all culverts, drains, sluices, ditches, waterways, embankments, slopes, retaining walls, bridges, tunnels and viaducts necessary for the maintenance of travel, dispatch of freight and communication between individuals and communities."

The purpose of the 1935 Act was to operate as a statute of repose with respect to the rights of way of roads or portions thereof that had theretofore been constructed by road building authorities of the several counties and of the State itself under circumstances of irregularity in the acquirement of title to the rights of way wherever existing roads had been constructed and were being used. Whatever may be its validity, applicability or effect as applied to the lands of private owners appropriated and put into use by the road building authorities absent the legal acquisition of an easement or title for the purpose, it is certain that such statute was not intended to divest public bodies, such as drainage districts, of any existing right they might have in rights of way and drainage works of such drainage districts acquired and held for drainage purposes in accordance with law.

The responsibility of completing and maintaining a project of reclamation in a drainage district in which special benefit

taxes have been imposed in consideration of benefits determined to flow from the works when completed and put into practical operation, is a high public trust and an inescapable legal duty on the part of the officials and agencies vested with the execution of the reclamation plan. It is therefore not to be presumed that a statute such as Chapter 17307, Acts of 1935, *supra,* was intended to apply to lands or rights of way of drainage districts the title or easement over which constitute a part of the works held in public trust for the purposes of drainage reclamation.

The other part of the controversy is fully covered in the opinion expressed by the Chancellor to the effect that the duty of the South Florida Conservancy District to execute the plan of drainage and reclamation for which it was created is a paramount and prior consideration to any right that may have been acquired by the County of Palm Beach to lay out and maintain a county road over the drainage levee and use it for purposes of transportation. Nor is it at all apparent that the building of the levee in question up to a level of 22½ feet above sea level will preclude the replacement of the road atop the levee as so reconstructed so as to provide the means of transportation heretofore enjoyed thereover.

This is not a case where Palm Beach County had no initial right to at least *conditionally* appropriate and use the levee for county road purposes so long as it was not needed for the purpose of drainage and reclamation by the State agency charged with the responsibility of constructing and maintaining drainage structures along and incident to the Hillsborough Canal. It is simply a case where the county's right under the circumstances of its appropriation and use of part of a canal right of way and levee along the canal must yield to the paramount purpose of drainage and recla-

mation when the two claims come into irreconcilable conflict. So the Chancellor's holding to that effect is correct and should not be disturbed.

In passing it might be said in conclusion that while this Court has discussed and disposed of the merits of the case as presented and argued on the record, the injunction below should have been granted at all events inasmuch as the State officers who were being arrested and prosecuted by county authorities for acts done by them *solely and only* as agents and servants of the South Florida Conservancy District, a State agency, were entitled to enjoy the same immunities from criminal prosecution as their principal, namely, the South Florida Conservancy District. This is so because excessive exercises of the district's powers, if any, were redressible only in a court having jurisdiction to adjudicate its claim of right and title to the right of way involved as the subject of the criminal prosecutions. See: Fellows v. City of Charleston, 62 W. Va. 665, 59 S. E. Rep. 623; 125 A. S. R. 990, 13 Ann. Cas. 1185, 13 L. R. A. (N. S.) 737; Adams v. Tanner, 244 U. S. 590, 37 Sup. Ct. Rep. 662, 61 L. Ed. 1336, Ann. Can. 1917D, 973, L. R. A. 1917F 1163.

Affirmed.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.