ROWE, Associate Justice.
On November 6, 1953, the plaintiffs filed their bill of complaint in the Circuit Court for Leon County, Florida, against the defendants, alleging that plaintiffs then and since 1928 owned property adjacent to and abutting on U. S. Highway 98 (State Road *249 30) for a distance of about 300 feet, and -is used for the operation of a business • known as M. G. Lewis and Sons Garage for the sale and servicing of motor vehicles, •sale of gasoline and lubricants, and cafe; that the business is housed in one building ■by reason of which automobiles displayed in the building may be seen by persons •traveling on said Highway; that the principal surfaced street of Port St. Joe, Florida, enters said Highway at a point ■adjacent to the above property; that said street is used by approximately 95%' of ■the workers going to and from a paper mill operated in Gulf County, Florida, by the St. Joe Paper Company; that said paper mill is west of the Highway, — the •entrance to the premises of the paper company being directly across the Highway from plaintiffs’ property; that the paper mill is served by the said Railroad Com■pany, which is wholly owned by the said Paper Company, — said Railroad Company presently having two tracks crossing the Highway and entering the Paper Com-jpany’s premises on the West side of the Highway; that as presently operated the -railroad does not constitute an obstruction to traffic upon said Highway and does not impose upon said Highway an undue “burden, nor does the railroad create any ■substantial traffic hazard, and no necessity •presently exists for the construction of a viaduct by which the Highway and its traffic would be carried over the railroad tracks; that the presently owned railroad yards of the Paper Company are on the west side of the Highway; that, however, •desiring to extend its railroad car switching and storage yard in an easterly direction across the Highway, the Paper Company has caused the Railroad Company to request permission of the State Road Department to lay 12 additional tracks across the Highway, so as to fan out from -the present two spur tracks; that although the defendants have been warned by plaintiffs that their property would be damaged and that public property would be diverted to private use if the 12 tracks should be laid across the Highway and a viaduct should be constructed to carry traffic over the said tracks, the State Road Department has attempted to authorize the defendant Railroad to construct the said 12 additional tracks across said Highway; that the Railroad is presently engaged in extending additional tracks across the Highway; that the proposed additional tracks (together with the existing two tracks, or a total of 14 tracks) will constitute a complete and total obstruction of traffic along the Highway, thereby obliterating and appropriating said Highway to private use so that it will become necessary to erect a viaduct over said tracks at great expense to -the people of the State of Florida and at practically no expense to the Railroad and none whatever to the Paper Company; that the construction of the proposed viaduct is not a public project, but a project made necessary by the Railroad and Paper Company’s collusion in extending its railroad car switching and storage yard; that the proposed viaduct is not being constructed for any road or highway purpose but for a combined railroad and paper mill purpose; that if the Railroad is permitted to continue with its purpose to obstruct the Highway, and if it thereby becomes necessary for a viaduct to be constructed, said viaduct or overpass will set up a concrete wall approximately 18 feet from the plaintiff’s show windows and would be approximately 22 feet high, and would result in irreparable injury to the business of plaintiffs in that A. “Plaintiffs would no longer have the right of ingress and egress to and from the Highway at all points along their 300 foot frontage upon said Highway. B. The plaintiffs’ building and show room would be completely hidden by said overpass, and its value as a business site completely destroyed. C. All traffic on the Highway adjacent to plaintiffs’ property would be carried to a height above the level of the roof of plaintiffs’ building.”; that the proposed action of defendants in laying the additional tracks will not only amount to unauthorized public *250 nuisance, appropriate property held in trust for public purposes to private use and benefit, create an obstruction and hazardous situation necessitating an unlawful expenditure of public funds to promote private ventures, but will amount to a taking of plaintiffs’ property without compensation and without due process of law, contrary to the Constitution and laws of Florida.
The plaintiffs prayed for the issuance of an injunction restraining further proceedings for the laying of additional railroad tracks across said Highway, and from constructing any bridge, trestle, overpass or viaduct over any portion of the Highway at any point where said Highway abuts upon the property of plaintiffs, and from raising or changing the elevation of said Highway at any point where said Highway is adjacent to the said property of plaintiffs. Temporary injunction was issued on November 13, 1955, as prayed for.
The State Road Department answered the bill saying:
1. These defendants deny each and every allegation contained in the said Bill of Complaint and demand strict proof thereof.
2. That any proposed construction by the State Road Department of Florida is necessary and essential to the best interests of the public.
3. That any proposed use of the Highway by the State Road Department of Florida is for Highway purposes.
4. That no property of the plaintiffs is being taken, invaded or injured.
The Railroad and the Paper Company answered the Bill of Complaint, and only so much thereof is set forth as is necessary to show the issues presented, as follows:
3. They admit that the defendant, St. Joe Paper Company, operates a paper mill west of the Highway, and that the entrance to the premises of said paper mill is across the Highway from the Plaintiffs’ property. They admit that the paper mill is served by the defendant, the Apalachicola-Northern Railroad Company.
4. They deny jointly and severally, each and every of the other allegations contained in said complaint.
Motions for Summary Judgment were made by the defendants, and on November 2, 1954, the Circuit Judge made his order on the Motions, saying:
“Ordered, adjudged and decreed that it is undisputed from the record that the proposed project does not take any of the Plaintiffs’ land or premises, and it further appears undisputed from the exhibits on file that the eighteen (18) feet remains between Plaintiffs’ property and the proposed overpass and the present pavement on said eighteen (18) feet will remain undisturbed.
“The Court is of the opinion that from the averments of the Bill of Complaint, the construction of the project will materially damage only the consequential rights of the Plaintiff to ingress, egress, light, air, and view, but under circumstances justifying the payment of appropriate compensation to plaintiff; thus the court is of the opinion that the bill has equity and the various motions for a summary judgment should be denied.”
On the petition of the defendants in said cause for writ of certiorari, the Supreme Court considered the above order of the Circuit Court, 79 So.2d 699, 700, and on January 28, 1955, made the following ruling:
“The history of this litigation and the pertinent facts are set forth in the dissenting opinion of Chief Justice Mathews in this cause. We are of the view that the sole question presented in the petition for certiorari is whether or not the lower court committed error when it denied the motion for summary final decree. Inasmuch as there appears to *251 be a material issue of fact created by the complaint and the answer of the State Road Department, it would be improper to quash the order of the chancellor at this point in the litigation. Certiorari, which is directed solely to the denial of a motion for summary final decree, is denied.” ■
A re-hearing of the Certiorari proceeding was had and denied by the same vote of the Justices, and therein Mr. Justice Hob-son wrote:
“Because I do not consider this case to be before us on the merits I vote to deny the Petition for Re-hearing. The only question presented is: Did the Circuit Judge err in denying the motion of Petitioners for the entry of a ■summary final decree? It appears to me that if the matter were here upon the merits our pronouncements in the -case of Bowden v. [City of] Jacksonville, 52 Fla. 216, 42 So. 394, as suggested in the opinion prepared by Mr. Chief Justice Mathews, would be controlling.”
Mr. Chief Justice Mathews wrote an opinion in the certiorari proceeding, and another on the motion for re-hearing. All three of these opinions now appear in the the case of State Road Dept. of Florida, etc. v. Lewis, Fla., 79 So.2d 699.
On Aug. 29 (should be 19), 1955, plaintiffs asked for permission to amend the complaint by adding to paragraph 21 the following:
“The desirability of constructing the proposed overpass is the direct and proximate result of the failure of the State Road Department to comply with its clear, mandatory duty to protect and conserve S. R. 30 (U. S. 98) and of the carelessness and stupidity of the Defendants St. Joe Paper Company and the Apalachicola-Northern Railroad in laying the St. Joe Paper Company’s wood yard and switching tracks perpendicular to S. R. 30 (U. S. 98) and in otherwise improvidently, carelessly and negligently constructing the aforesaid tracks and wood yard; that the defendants are guilty of malice, negligence and unskilfulness and of gross abuse of discretion in the proposed use and improvement of the aforesaid S. R. 30 (U. S. 98), to-wit, the Apalachicola Railroad, falsely acting under color of authority from the State Road Department and in collusion with the aforesaid State Road Department and St. Joe Paper Company, has negligently and unskilfully used the aforesaid public highway and has wilfully appropriated same by laying five (5) additional tracks across S. R. 30 to convey pulp-wood to the premises of the St. Joe Paper Company’s mill at Port St. Joe, Florida, when, in truth and in fact, the aforesaid five tracks are wholly unauthorized and constitute both a public and private nuisance, the acquiescence of the State Road Department in the laying of these tracks constitutes a gross abuse of discretion on the part of the said State Road Department, and only (1) track is necessary fully and adequately to meet the requirements of the St. Joe Paper Company’s mill at Port St. Joe, Florida; The construction of the proposed overpass by the State Road Department is a gross abuse of discretion on the part of the State Road Department”
The motion to amend was granted in these words:
“That the plaintiffs’ Motion to Amend filed August 18, 1955, be and the same is hereby granted and the plaintiffs in the proof of the allegations of carelessness, negligence, malice and unskilfulness or of gross abuse of discretion shall be limited in their testimony as to the proof of the factual matter alleged in said Motion to amend.”
*252 It was understood that the previous answers applied to the amendment.
On August 19, 1955, the Circuit Judge appointed W. K. Whitfield Special Master to take and reduce to writing the testimony and proofs offered, and present same to the court with his conclusions of law and facts therein involved, together with recommendations for appropriate decree.
The Special Master made his report and findings, from which we set forth the following :
“Neither the two existing tracks nor the proposed additional tracks crossing the Highway touched or abutted in any way plaintiffs’ property.
“The State Road Department has decided to construct an overpass on State Road No. 30 (U. S. 98) over the railroad tracks near plaintiffs’ property. It is contended by plaintiffs that if such an overpass was constructed it would cause plaintiffs damage by diverting traffic away from plaintiffs’ place of business and would deprive plaintiffs of light, air and view, and would greatly depreciate the value of plaintiffs’ property and the business operated thereon.
“The pleadings in this case and the testimony offered by plaintiffs conclusively show that neither the additional railroad tracks proposed to be installed by the Apalachicola-Northern Railroad nor the proposed overpass or viaduct would take, or abut upon, any of the land of plaintiffs. The overpass or viaduct would be constructed at least eighteen (18) feet from plaintiffs’ property and the plans for the overpass call for an eighteen (18) foot street leading to plaintiffs’ property. The testimony is that the proposed improvements would not take away from plaintiffs the right of ingress and egress to and from their property; however, the testimony does show that the ingress and egress would not be as convenient as at present.
“Plaintiffs contend (1) that the granting of a permit to lay additional tracks across State Road No. 30 is unauthorized and unlawful and constitutes an abuse of discretion on the part of the State Road Department of Florida, and diverts the use of a public highway to a private use; (2) that the construction of the proposed overpass is primarily for the benefit and accommodation of St. Joe Paper Company and would only incidentally benefit the traveling public; (3) that the construction of the proposed overpass would amount to an unlawful expansion of the public highway for the use and benefit of one abutting owner, and by permitting such use of the highway the State Road Department is guilty of malice as a matter of law against the other abutting property owner. Lastly it is contended that the construction of the overpass involves unlawful expenditure of public funds.”
“The relief sought by the plaintiffs was to permanently enjoin the defendants from proceeding with the installation of additional railroad tracks and the construction of the overpass until it was determined (1) that plaintiffs were entitled to damages, (2) that the amount of damages be assessed, and (3) to force the defendants to pay to plaintiffs the consequential damages from the construction of the overpass causing a change of grade in the highway.”
“I find from the evidence that the State Road Department proposes to build the overpass for the safety and convenience of the traveling public. In building the overpass the plaintiffs will suffer damages from that consequence by reason of the fact that their light, air and view will be at least partially obstructed and there will be some diversion of vehicular traffic, particularly thru traffic, The St. Joe Paper Company and the Apalachicola 'Northern Railroad will receive some indirect benefits in that the overpass will permit the free passage of railroad cars underneath without hindrance from vehicular traffic. It will also permit the switching of railroad *253 cars under the overpass without fear or concern for vehicular traffic passing overhead, which will eliminate the installation of expensive danger and warning signals.”
“Law of the Case”
“The primary question to he determined is:
“Have the plaintiffs alleged and proved facts and circumstances sufficient to bring them within the exception to the established law that an abutting owner has no right of action for consequential damages occasioned by an authorized change of grade of a street or highway?”
“The Supreme Court of Florida has said on many occasions that a governmental authority was not liable for consequential damages to an abutting land owner caused by an authorized altering of the grade of a street. See Bowden v. City of Jacksonville, 52 Fla. 216, 42 So. 394; Dorman v. City of Jacksonville, 13 Fla. 538; Selden v. City of Jacksonville, 28 Fla. 558, 10 So. 457 [14 L.R.A. 370]; Gold v. City of Tampa [100 Fla. 1134], 130 So. 914; Natural Gas & Appliance Co. v. Marion County, Fla., 58 So.2d 701; and Duval Engineering & Contracting Co. v. Sales, Fla., 77 So.2d 431.
“The State Road Department has wide discretionary powers with reference to maintaining state roads and projects and to make them safe for public use. See Section 341.24, Florida Statutes Annotated. Furthermore, Chapter 29965, Laws of 1955, F.S.A. §§ 334.01 et seq., 335.01 et seq.; 336.01 et seq., 337.01 et seq., 338.01 et seq., 339.01 et seq., declares the public policy of the State of Florida with reference to the public road system and makes the State Road Board the custodian of the state highway system with power to plan, devel-ope, operate, maintain and protect the highway facilities of the State for present, as well as for future use, subject only to the limitations of the Constitution and the legislative mandate hereinafter imposed, thereby giving to the State Road Department all lawful power and authority to plan, maintain and control the State Highway System.
“In this case, the State Road Department has determined that it would be to the best interest of the public in general to construct the overpass or driveway complained of by the plaintiffs.” Citing and quoting from the case of State of Florida v. Florida State Improvement Commission, Fla., 75 So.2d 1, 3. A portion of the quotation is as follows:
“The authority of the administrative agencies to whom is entrusted these governmental functions is limited only by the lawful exercise of their discretion. Within their respective areas of authority these public agencies exercise their discretion to devise plans and select sites to best serve the public need. When the plans adopted by such agencies do not exceed their lawful authority they should be upheld because the Court will not substitute its judgment for that of administrative agencies.”
“There is no testimony tending to show that the action taken by the State Road Department is arbitrary or capricious. There is no showing of malice, negligence or abuse of discretion. In fact, the testimony shows that the State Road Department planned to build the overpass prior to the time that the Apalachicola-Northern Railroad was permitted to install additional tracks on State Road No. 30.”
“I am of the opinion, therefore, that the construction of the overpass and/or the authorized change in grade of the roadway near plaintiffs’ property has been authorized by the proper administrative board having control of the public highways of this state.”
“I am further of the opinion from the testimony that the necessary change in elevation caused by the construction of the overpass will damage the consequential rights of the plaintiffs to light, air and *254 view, and will divert considerable traffic from passing plaintiffs’ property on the same level as at the present time. Since the construction of the overpass has been legally authorized it constitutes a lawful use or improvement of the street or highway and, under the law as announced by the Supreme Court in the Bowden case and similar cases, the change of grade of the street is not a taking or an appropriation of private property within the constitutional guaranty against such taking or appropriation without compensation, even though the rights of light, air and view, and the diversion of traffic are destroyed. This is under the doctrine of damnum abs-que injuria. The court speaks of such damages as ‘consequential damages’ meaning that they are simply the consequences of a legal act and therefore not basis for recovery in the courts, nor a lawful claim for compensation.”
“In answering the questions propounded by plaintiffs in their brief, it is my opinion that the construction of the overpass does not proceed from the laying of additional tracks as maintained by plaintiffs. It proceeds from a matter of public safety and welfare.”
“Plaintiffs contend that the laying of additional tracks is unauthorized and unlawful, and the construction of the proposed overpass is not a mere consequence from the lawful use and improvement of the street as a public highway. This contention has no merit and is not supported "by the testimony in the record. * * * ”
“The Special Master found that there was no merit in the contention of plaintiffs that the construction of the proposed overpass is primarily for the benefit of St. Joe Paper Company and only incidentally for the benefit of the traveling public; and also, that there was no merit to the contention of plaintiffs that the construction •of the proposed overpass proceeds from the negligence of St. Joe Paper Company in placing its wood yard at right angles to the Highway instead of parallel thereto; and also, that there was no merit to the contention of the plaintiffs that the construction of the proposed overpass proceeds from the unlawful appropriation of a public highway by one abutting owner thereon, condoned by and participated in by the State Road Department, thus constituting malice as a matter of law; and that the testimony does not support these contentions.
“In conclusion it is my opinion that the testimony does not support the allegations of the amended complaint that the defendants are guilty of malice, negligence, carelessness and unskilfulness or of gross abuse of discretion; and therefore, there would be no unlawful expenditure of public funds. * * * ”
In his Final Decree the Circuit Judge overruled all exceptions to the Report and Recommendations of the Special Master, and confirmed the same, and stated in said Final Decree:
“3. That the proposed construction by the defendants of the overpass, bridge, trestle, or viaduct and change in elevation of grade in State Road No. 30, herein sought to be permanently enjoined, are found by the Court to have been duly authorized by the proper administrative agencies of the State of Florida acting within their lawful authority and discretion to construct viaducts and to change the grade of highways and street, and that such authorization is found not to be arbitrary or capricious, but to have been obtained without malice, negligence or abuse of discretion; that the construction of said overpass or viaduct and change in grade is found to constitute a lawful use or improvement of the street or highway involved and that any damages sustained by plaintiffs as a result thereof are found to be incidental to a lawful use by defendants of the street or highway and consequently are found not to be compensable.
“4. That the proposed construction herein sought to be permanently enjoined *255 is found not to deprive plaintiffs of their right of access to the existing street or highway, and that any diversion of traffic from the property of the plaintiffs, and any impairment of the plaintiffs’ right to light, air, or view, resulting from such construction is found to he an incidental result from a lawful use or improvement by defendants of the street or highway in question; that defendants’ proposed construction of an overpass, bridge, trestle, or viaduct, and proposed change in grade of the street or highway are found not to constitute a taking,' or appropriation of plaintiffs’ property, nor an unlawful entry, invasion or trespass thereon; and that the plaintiffs are therefore found not entitled to any compensation as prayed for in their bill of complaint as amended.
“5. That the defendants are found to have been guilty of no malice, negligence, carelessness, unskilfulness or gross abuse of discretion; and that the action here sought to be permanently enjoined is found to involve no unlawful expenditure of public funds.
“6. That the facts proved herein show no unlawful diversion of the street or highway involved from proper street or highway purposes.
“7. That the temporary restraining order heretofore entered herein on the 13th day of November, 1953, be, and the same is hereby vacated, and set aside, and the injunction therein granted is hereby dissolved.
“8. That the equities of this case are found to be with the defendants and against the plaintiffs, and that plaintiffs’ bill of complaint herein, as amended, be and the same is hereby dismissed.”
The Final Decree was signed March 7, 1956, and Recorded in Chancery Order Book 59, page 91. An Appeal was taken by the plaintiffs from said decree. Several assignments of errors were made, but inasmuch as the contentions of plaintiffs are set forth in the report of the Special Master, it is not deemed necessary to set forth here more than the first assignment, which is as follows:
“(1) The court erred in entering its final decree herein bearing date the 7th day of March, 1956 and recorded in the records of the above styled court in Chancery Book 59, page 91.”
There is substantial evidence in the record to support the findings of the Special Master, which have been accepted and confirmed by the Circuit Judge, and also, to support the Final Decree.
The Special Master having found that the State Road Department acted with lawful authority, and that the testimony does not show that the defendants are guilty of malice, negligence, carelessness and unskilfulness or gross abuse of discretion, and the Circuit Judge having approved the report of the Special Master, the quotation from State Road Department v. Lewis, 79 So.2d at page 703, is now approved and is decisive of this case:
“‘No property of respondents is entered or taken. As shown by this record, the overpass is to be constructed for the safety of the travelling public. In the case of Bowden v. City of Jacksonville, supra, this court said: ‘As incidents to the ownership of a lot bordering on a public street, there are, in addition to the right of passage over the street in common with the public, the private property right of egress and ingress from and to the lot by way of the street and the private property right of. light and air which the street affords. The owner of such a lot takes and holds it subject to the right of the state, or any duly authorized governmental agency acting for it, to improve the street for public use by *256 altering the grade of the street, by the erection of a viaduct thereon, or otherwise, for street purposes; and, in the absence of legislation or a valid contract the owner has no right of action against a city authorized by law to grade and improve the street for injury to the lot or property thereon, or for the impairment or destruction of the incidental rights of ingress and egress and of light and air which the street affords, because of changes made by the city in the grade of such street by building or rebuilding a viaduct thereon for the improvement of such street, even though such changes in the grade prove inconvenient or expensive to the lot owner in the use of his property, where there is no diversion of the street from its proper street purposes, and where the injury to the lot or property thereon' or the impairment or destruction of the incidental rights is a mere consequence from the lawful use or improvement of the street as a highway, and where' there is no physical invasion of or trespass upon the lot or property, and no malice, negligence, or unskillfulness in the use or improvement of the street for street purposes to the injury of the lot owner. See Dorman v. City of Jacksonville, 13 Fla. 538; Selden v. City of Jacksonville, 28 Fla. 558, 10 So. 457 [14 L.R.A. 370].”
See also, the case of Weir v. Palm Beach County and State Road Department of Florida, Fla., 85 So.2d 865; and cases cited above in the Report of the Special Master.
The decree appealed from is affirmed.
TERRELL, C. J., and HOBSON, ROBERTS, DREW and THORNAL, JJ„ concur.
THOMAS, J., not participating.