115 So.2d 778 (1959)
JACKSONVILLE EXPRESSWAY AUTHORITY, a corporate body politic and agency of the State of Florida, City of Jacksonville, a municipal corporation under the laws of Florida, and County of Duval, a political corporation of the State of Florida, Appellants,
v.
Robert H. MILFORD and Frances C. Milford, his wife, Lewis Bailey Milford and Dorothy B. Milford, his wife, Charles P. Milford and Sue B. Milford, his wife, John D. Slater, Jr., and Dorothy K. Slater, his wife, and Shell Oil Company, a corporation, Appellees.
No. A-355.
District Court of Appeal of Florida. First District.
October 22, 1959.
Rehearing Denied November 23, 1959.
Motion to Certify to Denied November 23, 1959.
*779 Knight, Kincaid, Young & Harris, Jacksonville, for appellants.
Loftin & Wahl, William M. Madison, J. Henry Blount, and Barnes & Slater, Jacksonville, for appellees.
Motion to Certify to Supreme Court Denied November 23, 1959.
STURGIS, Judge.
Jacksonville Expressway Authority, a state agency, appeals from a final judgment and order of distribution entered in a condemnation proceeding under Chapters 73 and 74, Florida Statutes 1957, F.S.A., to acquire for road right-of-way purposes certain real property of the appellees, business in character, located in the City of Jacksonville.
The City of Jacksonville and Duval County, whose interests as holders of ad valorem tax liens were affected by the order of distribution, join in the appeal.
The Jacksonville Expressway Authority found it necessary to change the grade of the existing right of way of Main Street in the City of Jacksonville so as to allow North-South traffic to enter and leave an expressway which it was constructing. The Authority also found it necessary to widen Main Street in order to permit traffic to enter and leave Main Street without using the expressway proper. To accomplish the latter purpose, condemnation proceedings were brought to acquire the North 20 feet and the East 37 feet of a parcel of business property owned by appellees. The property, prior to the appropriation of the mentioned part, had a dimension of 132.5 feet North and South, bounded on the East by South Main Street, and 100 feet East and West, bounded on the North by Alvarez Street.
A pretrial order provided, in part:
"The only issue involved in this cause, other than attorney's fees, is the fair market value of the property taken herein plus severance damage, if any, to the remaining, adjoining and adjacent property of the Defendants, Milford, et al. * * * The Court rules that a property owner is entitled to compensation for damages, if any, resulting from the change in grade of an existing right-of-way abutting the owner's property at the time of taking, where a portion of the property of said owner is taken as an essential part of one comprehensive project although there is to be no change of grade in the property taken and evidence will be admitted in accordance with this ruling. The Petitioner's objection to this ruling is noted and overruled so that there will be no necessity for *780 it being restated at the time of the offering of said testimony. In view of this ruling, the Petitioner may present such evidence as it may deem necessary with respect to a change in grade element of damages without waiver of its objection hereinabove mentioned." (Emphasis supplied.)
Pursuant thereto the appellees presented three witnesses, each of whom testified to the effect that appellees suffered special damages as a result of the change in grade of that part of the roadway that was owned by the public prior to the condemnation of the mentioned part of appellee's property. One of the witnesses fixed $7,117 as the amount of such special damage, another fixed $7,000 as the figure, and the other fixed $5,361 as the figure.
The change in grade made within the confines of the preexisting right of way resulted from the construction of a ramp thereon. The condemned property was added to that part of the preexisting right of way not occupied by the ramp, and an accessway to the ramp  part of an expressway  was constructed thereon. The construction of the ramp and accessway did not result in any change in grade of the property condemned in this proceeding. Otherwise stated, the street level of that part of appellees' property which remained after the parcel in condemnation was appropriated to the public use has the same street level as that which existed prior to such taking.
In apportioning between the parties in interest the amount awarded as compensation for the condemned property, the trial court prorated between the owner and those claiming under him, on the one hand, and the City of Jacksonville and Duval County, respectively, on the other hand, as of the date title was acquired by the condemning authority, the ad valorem tax assessed on such property by the respective taxing authorities for the current tax year. This action forms the basis for an appropriate assignment of error.
All real and personal property is subject to taxation for county purposes on the first day of January of each year and the tax lien is superior to all others. F.S.Sec. 192.04, F.S.A. This lien continues in force until discharged by payment, and the property owner is charged with knowledge that the tax is due and payable annually. F.S. Sec. 192.21, F.S.A.
The charter of the City of Jacksonville requires all property to "be assessed as of the first day of January of the year for which such assessment is made" (c. 5065, Laws of Florida, Acts 1901) and creates a lien therefor "on the property assessed superior to all other liens or claims until the same shall be paid" (c. 4300, Laws of Florida, Acts of 1893).
Ad valorem taxes against real property attach to the res without regard to ownership. Spratt v. Price, 18 Fla. 289. In Dolores Land Corp. v. Hillsborough County, Fla. 1953, 68 So.2d 393, it was held that where a deed to state land was executed December 29, 1947, but not delivered until January 1, 1948, the property was exempt from taxation in 1948. Parenthetically, it is immaterial that property as to which the tax lien attaches on the first day of a particular tax year is thereafter acquired by an entity whose property is exempt from taxation.
We find nothing in Sections 73.011 and 74.08, Florida Statutes 1957, F.S.A., vesting in the trial court authority to prorate ad valorem taxes between the owner and the taxing authority, as was done in this case. The Federal statute (U.S.C.A., Title 40, Section 258a) contains the following provision:
"The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable."
A similar provision is found in subsequently enacted Section 74.08, Florida Statutes 1957, F.S.A. Notwithstanding the *781 statute, the Federal courts generally hold that, absent state law to the contrary, the tax lien must be paid in its entirety. Collector of Revenue, etc. v. Ford Motor Company, 8 Cir., 158 F.2d 354; United States v. Certain Parcels of Land in Philadelphia, Pa., 3 Cir., 130 F.2d 782; United States v. Certain Parcels of Land in City of San Diego, San Diego County, D.C., 44 F. Supp. 936; United States v. Certain Lands in City of Eau Claire, Eau Claire County, Wisconsin, D.C., 49 F. Supp. 225.
In United States v. 111,000 Acres of Land in Polk and Highlands Counties, Fla., 5 Cir., 1946, 155 F.2d 683, 686, the condemnation proceedings were begun January 19, 1942. A stipulation recited that the defendant had clear title, free of liens. No mention was made of the 1942 taxes, the lien of which attached on January 1, 1942. The court of appeal said:
"The district judge correctly held that the lien for them against the land was transferred to the fund, and payable out of it. The assessment of the taxes did not add anything to the value of the land, which the United States was acquiring. They are the burden of the owner of the lands on Jan. 1, 1942, before the United States took them."
City and County governments generally operate under budgets which depend on ad valorem tax collections to provide the funds necessary to meet the contemplated expenditures. It is not difficult to visualize situations where proration of the tax in the manner adopted in this case would result in demoralization of the financial structure of such governments.
We are not concerned on this appeal with any question of priority as between the tax due to the City and that due to the County. The trial court was without authority to prorate or cancel any part of the ad valorem tax liens in question. The tax liens followed the interest of the fee owner as it shifted from the land to the award. It is superior to all others and is payable out of the award.
Another assignment of error, primarily insisted upon by the Jacksonville Expressway Authority, presents the following point for determination: Whether the owner of property taken under the power of eminent domain for road right-of-way purposes is entitled to compensation for damages, if any, resulting from a change of grade in the right of way of a previously existing roadway that at the time of taking abutted the owner's property, although the road project for which the additional property was taken did not result in any change of grade in the property taken. Appellees insist, admitting that the condemnation of the subject property did not produce any change in the grade of the preexisting right of way, that the question for determination should embrace the factual premise that the property condemned is "an integral and inseparable part of one comprehensive project," that is to say: that it was to be used for the purpose of constructing a one-way street, abutting the owners' remaining adjacent property, carrying traffic in a southerly direction onto the expressway ramp constructed on the preexisting right of way, and that the taking was necessary in order for the Jacksonville Expressway Authority to use practically all of the preexisting  the old  right of way of South Main Street in constructing the ramp, viaduct or overpass thereon. Our treatment of the subject assumes that the premise of the appellees is correct.
The rule is well settled here that damages are not allowable to a property owner for a change in grade or other alteration in a street in which the public holds an existing easement for street purposes. Bowden v. City of Jacksonville, 52 Fla. 216, 42 So. 394; Selden v. City of Jacksonville, 28 Fla. 558, 10 So. 457, 14 L.R.A. 370; Dorman v. City of Jacksonville, 13 Fla. 538, 7 Am.Rep. 253. In Lewis v. State *782 Road Department of Florida, Fla. 1957, 95 So.2d 248, the Supreme Court of Florida reiterated this rule and, in addition to the above cases, cited with approval Gold v. City of Tampa, 100 Fla. 1134, 130 So. 914; Natural Gas & Appliance Company v. Marion County, Fla., 58 So.2d 701; and Duval Engineering & Contracting Company v. Sales, Fla., 77 So.2d 431. In the Lewis case the Supreme Court said that under the doctrine of damnum absque injuria "the change of grade of a street is not a taking or an appropriation of private property within the constitutional guaranty against such taking or appropriation without compensation, even though the rights of light, air and view, and the diversion of traffic are destroyed." [95 So.2d 254] Applying that rule, we find no facts in the case on appeal entitling the appellee-landowners to recover damages for the change in grade of the preexisting right of way. The fact that incident to such a change in grade in the preexising right of way there occurs a simultaneous or coincidental condemnation of property abutting the preexisting right of way does not vary the rule.
Appellees cite City of Tampa v. Texas Company, Fla.App. 1958, 107 So.2d 216, 218, as holding that the property owner is entitled to recover damages to the property remaining when the part taken constitutes "an integral and inseparate part" of the over-all project. However, our analysis of that case leads us to conclude that it actually supports appellants' position. The project there involved a widening of the right of way and a lowering of the curb line. The Second District Court of Appeal held that the property owners were not entitled to recover damages to their remaining land because there had been no lowering of its grade. The answer to the second question we have discussed is clearly pinpointed by Judge Allen who, speaking for the court in that case, said:
"The Florida courts have held uniformly that although an abutting landowner may suffer consequential damage for the use of public lands by public authority, such is damnum absque injuria and therefore not recoverable by the landowner in absence of an actual, physical taking by such public authority. Such use includes widening a street or changing the grade of a street."
To the same general effect see Jahoda v. State Road Department of Florida, Fla. App., 106 So.2d 870, and cases therein cited, which adopted the rule for arriving at just compensation for property not taken but adversely affected as laid down in the case of Board of Commissioners of Santa Fe County v. Slaughter, 1945, 49 N.M. 141, 158 P.2d 859. We adhere thereto.
Other assignments of error challenge the use by appellees' witnesses of the so-called "depth rule" in arriving at the value of the property taken. That rule is predicated on various factors, including one which gives a value to each foot of a lot from front to rear based on its percentage in relation to the value of the entire lot. By the use of such tables the witnesses reached an opinion as to the value of the property taken. Except for the inclusion in the base figure of an item of damage for the change in grade, there does not appear to be any error in using the so-called "depth rule" which has come to be recognized as a reliable method by which to determine the value of part of a business lot that is condemned for public use.
For the reasons stated, the final judgment must be and it is set aside and this cause is remanded for a new trial. It follows that the order of distribution should be and it is also set aside. Upon final award of compensation for the property taken, the full tax payable for the year in which the property was taken shall be deducted from that portion of the award to which the owners of the property are entitled, and the amount deducted for that *783 purpose shall be paid to the taxing authorities in whose favor the taxes were levied, as their interests may appear.
Reversed and remanded with directions.
WIGGINTON, C.J., and CARROLL, DONALD K., J., concur.