170 So.2d 817 (1964)
STATE ROAD DEPARTMENT of Florida, an Agency of the State of Florida, Petitioner,
v.
H.B. LEWIS, Duffy Lewis and St. Joe Reduction Company, a Florida Corporation, Respondents.
No. 33172.
Supreme Court of Florida.
June 26, 1964.
Adhered to on Rehearing December 22, 1964.
P.A. Pacyna, Tallahassee, for petitioner.
Cecil G. Costin, Jr., Port St. Joe, for respondent.
ERVIN, Justice.
The State Road Department is the Defendant in an inverse condemnation action filed July 16, 1960, in the Circuit Court of Gulf County by H.B. Lewis, Duffy Lewis and St. Joe Reduction Company, a Florida corporation, as Plaintiffs. The *818 decree of the Circuit Court in said action was adverse to the State Road Department. The Department appealed to the District Court of Appeal, First District, which affirmed in part and reversed in part the decree of the Circuit Court as will appear hereinafter. See State Road Department v. Lewis, 156 So.2d 862 (Fla.App. 1st 1963). The Department has petitioned the Supreme Court for a writ of certiorari to the District Court of Appeal. The Department will be referred to herein as the Petitioner and H.B. Lewis et al. as Respondents.
This controversy arose over the widening of a part of State Road 30 (U.S. 98) in 1952 and the later construction in 1956-58 of a vehicular overpass upon the widened road which road lies adjacent Respondents' property in Port St. Joe, Florida.
Respondents alleged in their inverse condemnation action that Petitioner had taken part of Respondents' land for the widening of said road and for the overpass without due process and payment of just compensation. The Petitioner pleaded to defenses, res adjudicata and acquisition by dedication under § 337.31, Florida Statutes, F.S.A.
In earlier litigation Respondents sought to enjoin Petitioner from constructing the overpass. See State Road Department of Florida v. Lewis, 79 So.2d 699 (Fla. 1955), and Lewis v. State Road Department, 95 So.2d 248 (Fla. 1957). It is from this litigation the Petitioner plead res adjudicata.
The District Court of Appeal affirmed that part of the decree of the Circuit Court finding that the Petitioner in its widening project in 1952 and in the subsequent overpass construction project of 1956-58 had taken from Respondents a small triangular parcel of land and a narrow strip of land for a pedestrian walkway. It also affirmed that part of the decree which found that a drop curb in front of Respondents' property was replaced by Petitioner with a raised curb affecting Respondents' access and that Respondents' 18' access or service roadway was narrowed by Petitioner to 16 1/2' in the new construction. Respondents' business adjacent the roadway and overpass was a service station, cafe and sales and service of motor vehicles of more than five years operation or standing.
The District Court of Appeal reversed in part the Circuit Court's decree to transfer the cause to the law side of the court for a jury determination of damages to Respondents because of their loss of access to Road 30 (U.S. 98), occasioned by the construction of the overpass and the approach thereto changing the grade of the road. It found the adjudication of the earlier injunction suit (Lewis v. State Road Department, 95 So.2d 248), res adjudicata of this issue. However, it affirmed the Circuit Court in its finding there was a wrongful taking of the triangular parcel, the pedestrian strip and that damages were warranted for raising the curb and for injuries to the remainder of Respondents' property and transferred these matters to the law side for jury determination. Notwithstanding its reversal of the Circuit Court on the basis of res adjudicate denying damages for loss of access due to change of grade by construction of the overpass, the District Court of Appeal held:
"However, the facts herein proven show construction of the overpass in a manner not contemplated by the courts in the injunction suit [Lewis v. SRD, 95 So.2d 248]  e.g. that the overpass was actually built so that the tip of the Lewis [Respondents] triangle is located in the cribbed wall which rises approximately twenty feet higher than the natural land level, that the raising of the curb on the Lewis property prevented the further use of the pump [gasoline] island, and that the south bound traffic on U.S. 98 may not leave the overpass and turn left directly on the one-way access road to the Lewis property  are factors which, due to the particular type of business being operated by *819 Lewis upon the Lewis lands, may be considered in awarding special damages to the extent these factors have contributed to the injury or destruction of the established business of more than five years' standing." [E.S.] Cf. Sec. 73.10, Florida Statutes, F.S.A.
Petitioner contends this holding conflicts with the earlier decision, Lewis v. State Road Department, 95 So.2d 248 (1957), in that it authorizes special damages for loss of access, because southbound traffic may not leave the overpass and enter Respondents' business area, whereas the earlier decision held raising the elevation of a roadway did not give rise to consequential damages. See Bowden v. City of Jacksonville, 52 Fla. 216, 42 So. 394; Selden v. Jacksonville, 28 Fla. 558, 10 So. 457 (1891); Jacksonville Expressway Authority v. Milford, 115 So.2d 778 (Fla.App.1st 1959), and Weir v. Palm Beach County, 85 So.2d 865 (Fla. 1956). Its contention is that the taking of land for a right of way may damage an adjacent established business of more than five years standing for which damage special compensation can be awarded but new overpass construction upon the right of way changing the elevation or grade of the roadway which affects or cuts off existing rights of access etc. is consequential damage and not an element for award of compensation to adjacent owners including owners of established businesses of more than five years standing.
We believe this contention of Petitioner is well taken. The statute, § 73.10, does not, in our view, change or enlarge the judicial rule against allowing consequential damage because of change of grade of an authorized roadway affecting access, light or view. It only operates in the condemnation of a right of way where the effect of the taking of the property itself may damage or destroy an established business of more than five years standing, in which event the jury shall only consider what effect the denial of the use of the specific property taken has upon the said business and award special damages. These special business damages authorized by the statute are predicated upon the effect the taking of an owner's land for a right of way has upon such a business and not upon the effect the construction of an overpass or other change of grade of a roadway has upon such business. The District Court of Appeal while basing its determination upon its interpretation of § 73.10, the constitutionality of which is not under assault in this case, nevertheless deviated from the long adhered to holdings of this court that consequential damages arising from the elevation or change of grade of an authorized road by the construction of an overpass or otherwise are not the subject of compensation.
The conflict jurisdiction of this court having been invoked and found to exist in respect to the question of consequential damage, we turn now to the merits and consider whether there was error in the holding of the District Court of Appeal that there was an illegal taking of the triangular parcel and the pedestrian walkway, damage to Respondents by reason of the raising of the curb and the reduction of the service road by 1 1/2' and in transferring the case to the law side of the court for assessment of damages for the value of these items and incidental damages to the remainder of Respondents' property.
After a careful review of the decree and holdings of the court below and the salient facts, it is our conclusion there was error in rejecting Petitioner's defenses in their entirety.
The Respondents' inverse condemnation action was not commenced until July 16, 1960. As far back as December 1952 the widening of State Road 30 (U.S. 98) had been completed. The vehicular overpass was completed in 1958. During all of the time from 1953 the Petitioner has worked and maintained uninterrupted *820 State Road 30 (U.S. 98) which road this court takes judicial notice is an important road in the system of state roads.
From our review of the case we cannot agree with the District Court of Appeal that Petitioner does not have title to the portion of the road and the right of way thereof which was widened prior to 1953. At all times from 1953 to 1960 Respondents had knowledge of the utilization by Petitioner of lands for the right of way of the widening project and its continuous maintenance and upkeep thereof and could have specifically laid claim to it and put the matter in issue as they finally did in the present action. We do not find any inconsistency of positions on the part of Petitioner or any basis for estoppel in this particular respect. As we read the record in the earlier injunction case we find that it related to the overpass project and that as to it the Petitioner claimed no property of the Respondents was being taken. We do not find that the Petitioner in the earlier litigation disavowed ownership or claim to any of the right of way used for the widening project, so as to preclude its claim for the same under § 337.31, Florida Statutes 1961, F.S.A.
In the case of Palm Beach County v. South Florida Conservancy Dist. (1936) 126 Fla. 170, 170 So. 630, this court held that the statute operates as a statute of repose with respect to the rights of way of roads or portions thereof theretofore constructed by the counties and the State Road Department and which are being used.
In Bridgehead Land Co. v. Hale (1941), 145 Fla. 394, 199 So. 361, 363, in considering the operation and validity of the statute, this court said:
"We find no merit to this assault but, on the other hand, we find the act well grounded in reason. It is shown that the State had constructed thousands of miles of hard surfaced roads and that in many cases it had not acquired rights of way for them. The statute in effect provides that in all cases where lands had been appropriated for highway purposes and used for not less than four years that it would be presumed that the owners had dedicated them to such use unless that within one year they express a contrary intent in writing to the State Road Department or the public body maintaining the road.
"Certainly it was important that the title to these road beds be settled, and we find nothing unreasonable in the terms of the act, all claimants were charged with notice of its contents, and since thousands of dollars were being spent in the roads covered thereby and it was for an important public purpose, it was competent for the legislature to adopt this means to settle the question. We have examined Thiesen v. Gulf, F. & A.R. Co. et al., 75 Fla. 28, 78 So. 491, L.R.A. 1918E, 718, relied on by plaintiff in error, but it does not militate against this view and one year is time sufficient for any adverse claimant to file his claim."
We denote nothing in Lovey v. Escambia County, 141 So.2d 761 (Fla.App.1st 1962), which supports the views of the District Court of Appeal that the dedication of the widened roadway was not consummated because Respondents did not intend by their conduct or otherwise to give the Petitioner "a single grain of sand" or its conclusion that: "The evidence in this cause falls short of the statutory requirement necessary for the conclusive presumption of dedication to the state." The conduct or intention of the Respondents is not controlling rather it is the action of the road authorities as expressed in the Lovey case, supra:
"Reverting to the statute [§ 337.31, Florida Statutes] under consideration it seems clear to us that the continuous and uninterrupted construction and maintenance of a public road by a county for a period of four years gives rise to a conclusive presumption that *821 the owner of the land on which the road is located has dedicated the same to the public for road purposes."
It is, therefore, our holding that the widened portion of the road constructed in 1952 and continuously and uninterruptedly maintained since by Petitioner is vested in the public by the statute.
The overpass project was not completed until 1958. Section 337.31, Florida Statutes, F.S.A., would not operate to vest in the Petitioner any new rights of way specifically taken for the overpass inasmuch as Respondents commenced the present action in 1960 before four years had run.
The Petitioner's construction plans for the overpass were considered in the earlier injunction litigation and resulted in the determination that no lands or properties of Respondents were to be used for the overpass. But in the instant case it was found Petitioner subsequently departed from these plans and took or damaged some of the land and properties of Respondents. As to these additional lands or property rights of Respondents used in the overpass construction which were taken or damaged by Petitioner by such departure from the overpass plans and which were not a part of the lands used for the already completed widening project of 1952 and prior years, we affirm the decision of the District Court of Appeal. Poe v. State Road Department, 127 So.2d 898 (Fla.App.1st 1961). In further proceedings it will be necessary to keep separate the lands and properties of the widening project from those subsequently used or damaged in the overpass construction.
Petitioner has called our attention to the case of the City of Tampa v. Texas Co., 107 So.2d 216 (Fla.App.2d 1958), in which a small part of a parcel of land was taken without apparent detriment to the remainder of the parcel upon which was located a filling station. It is not necessary at this point in the litigation to anticipate the application of this case and perhaps others which go to the question of correlating damages in a case where a part of a parcel is taken and incidental damage results to the remainder of the parcel and the use thereof. Moreover, the presumption is that at the trial of the action on the law side for the determination of damages by the jury the Circuit Court will apply appropriate legal principles to the issues and facts.
Affirmed in part and reversed in part with directions that the cause be remanded to proceed in accordance with this opinion and judgment.
DREW, C.J., and THORNAL, CALDWELL and HOBSON (Ret.), JJ., concur.