QUESTIONS: 1. Under what statutory and constitutional authority do Ch. 298, F. S., water management districts, as opposed to Ch. 373, F. S., water management districts, enjoy exemption from ad valorem taxation? 2. If a response to question 1 includes a finding that Ch. 298, F. S., water management districts are political subdivisions of the state and/or their functions fall within a public purpose, may such districts consequently prohibit public access to such "public" lands?
SUMMARY: Property owned by drainage and water management districts created pursuant to Ch. 298, F. S., would, under Department of Revenue Rule 12B-1.207, F.A.C., be immune from ad valorem taxation. Section 196.199(1), F. S., further provides that such property may be exempted from ad valorem taxation when used for governmental or public purposes. Such districts may prohibit trespass on property owned by them and presently are not lawfully authorized to permit general public use thereof. I gather from your inquiry that you are concerned about the sufficiency of existing constitutional and statutory law to exempt such drainage and water management districts from ad valorem taxation and to control the use of their property or the desirability or necessity of legislation in these areas. The Florida Constitution has no specific provision with regard to these matters; however, I trust the following discussion of relevant statutory provisions and case law will be helpful to you. AS TO QUESTION 1: Chapter 298, F. S., provides for the formation of water management districts and prescribes their duties and functions. Section 298.03(3) provides that such districts are created as "public corporation[s] of this state." It might be noted, parenthetically, that in AGO 075-108 I expressed the opinion that the provisions of ss. 165.022 and165.041(2), F. S., operate to supersede the provisions of Ch. 298 concerning the methods of creating and abolishing water management districts under Ch. 298. Initially, it should be noted that property owned by the state and its political subdivisions is immune from ad valorem taxation in Florida. Dickinson v. City of Tallahassee, 325 So.2d 1 (Fla. 1975), Park-N-Shop, Inc. v. Sparkman, 99 So.2d 571, 573-574 (Fla. 1957); AGO's 074-315 and 072-277; see also State v. Alford, 107 So.2d 27, 29 (Fla. 1958); and Orlando Utilities Commission v. Milligan, 229 So.2d 262, 264
(4 D.C.A. Fla., 1970). Department of Revenue Rule 12B-1.207, F.A.C., provides, in pertinent part:
(C) Property owned and used exclusively by the United States, the state or a political subdivision thereof is immune from taxation. . . . * * * * * (2) A political subdivision of the state shall include the following: county authorities, and agencies and instrumentalities of the state or county. In AGO 074-315, I was presented with the issue of whether property owned by the Oklawaha Basin Recreation and Water Conservation Control Authority is immune from ad valorem taxation. At that time, Department of Revenue Rule 12B-1.207, F.A.C., provided in pertinent part: (C) Property owned and used exclusively by the United States, the state, or a political subdivision thereof is immune from taxation. . . . * * * * * (2) A political subdivision of this state, shall include the following: special tax districts . . . . (Emphasis supplied.) In AGO 074-315, I stated: The Department of Revenue is charged with the duty of prescribing "reasonable rules and regulations for the assessing of and collecting of taxes." Section 195.042, F. S. Absent a judicial determination to the contrary, the quoted provisions of Rule 12B-1.207, supra, constitute a proper exercise of that authority. See 1 Fla. Jur., Admin. Law, s. 90, AGO 073-437. Therefore, the property of a special taxing district such as the authority would appear to be generally immune from taxation, absent some specific reason to the contrary. Drainage and water management districts created under Ch. 298, F. S., have long been held to partake of sovereign immunity from tort liability because they act "in a governmental capacity as . . . public corporation[s]." Rabin v. Lake Worth Drainage District,82 So.2d 353, 355 (Fla. 1955), cert. den. 350 U.S. 958; see also Spangler v. Florida State Turnpike Authority, 106 So.2d 421, 423
(Fla. 1958). The functions performed and purposes served by drainage and water management districts could be directly performed and served by the state itself, see Lainhart v. Catts,75 So. 47 (Fla. 1917), and Richardson v. Hardee, 96 So. 290 (Fla. 1923), and such districts have been referred to as agencies of the state, see Palm Beach County v. South Florida Conservancy District, 170 So. 630, 633 (Fla. 1936). In addition, the Legislature has provided the Department of Environmental Regulation with the power to, inter alia, join in or initiate a petition for the creation of a water management district, s.298.01 (but see AGO 075-108, supra); to object to the creation of such a district, s. 298.03(1); to petition for amendment to the decree creating such a district or to amend or change the district's water management plan, s. 298.07(1); to appoint members to the district's board of supervisors in the event the election therefor is not held, or a vacancy arises, ss. 298.11(3) and298.12; to review a district's water management plan and proposed modifications thereto, s. 298.25; and to file exceptions to the report of the district's board of supervisors assessing benefits and damages to the property and lands within the district, s. 298.34. See also "whereas" clauses to Ch. 72-291, Laws of Florida, and 84 C.J.S. Taxation s. 259. An "instrumentality" is defined by Webster's New Twentieth Century Dictionary (2nd ed. 1971) as "the condition, quality or fact of being instrumental, or serving as a means; agency; means; as, the instrumentality of the law." (Emphasis supplied.) Organizations such as the American National Red Cross, American National Red Cross v. Department of Employment, 263 F. Supp. 581 (D.Colo. 1965), and national banking institutions, First National Bank of Homestead, Florida v. Dickinson, 291 F. Supp. 855 (N.D.Fla. 1968), have been held to be "instrumentalities" of government. In full consideration of the foregoing, it is my opinion that drainage and water management districts created under Ch. 298, F. S., are "instrumentalities" of the state within the purview of Department of Revenue Rule12B-1.207, F.A.C., and, as such, property owned by such districts is immune from ad valorem taxation. Attorney General Opinion 074-315. Furthermore, it would appear that property owned and used by a drainage and water management district is entitled to exemption from ad valorem taxation pursuant to s. 196.199, F. S.: (1) Property owned and used by the following governmental units shall be exempt from taxation under the following conditions: * * * * * (c) All property of the several political subdivisions and municipalities of this state which is used for governmental, municipal, or public purposes shall be exempt from ad valorem taxation, except as otherwise provided by law. (Emphasis supplied.) Chapter 196, F. S., does not contain a definition of "political subdivision," but s. 1.01, F. S., provides in pertinent part: In construing these statutes and each and every word, phrase, or part hereof, where the context will permit: * * * * * (9) The words "public body," "body politic" or "political subdivision" include counties, cities, towns, villages, special tax school districts, special road and bridge districts, bridge districts and all other districts in this state. (Emphasis supplied.) Therefore, it is my opinion that property owned by a drainage and water management district created under Ch. 298, F. S., and used for governmental or public purposes would be entitled to exemption from ad valorem taxation pursuant to s. 196.199, F. S. AS TO QUESTION 2: Drainage and water management districts may be created under s. 298.01(1), F. S., for "the purpose of preserving and protecting water resources." Such districts "have no power or authority other than that conferred by statute." Halifax Drainage District of Volusia County v. State, 185 So. 123,129 (Fla. 1938); see also AGO's 076-37, 074-314, 073-374, 074-49, and 074-169. The Legislature has delineated the powers granted to the board of supervisors of drainage and water management districts in s. 298.22, F. S., which provides in pertinent part: In order to effect the drainage, protection and reclamation of the land in the district subject to tax, the board of supervisors may: * * * * * (5) Shall have the right to hold, control and acquire by donation or purchase and if need be, condemn any land, easement, . . . for any of the purposes herein provided, or for material to be used in constructing and maintaining said works and improvements for drainage, protecting and reclaiming the lands in said district. (Emphasis supplied.) Generally, a governmental body is considered to have, with respect to its own lands, the rights of an ordinary proprietor. Clayton v. Warlick, 232 F.2d 698 (9th Cir. 1956); 81 C.J.S. States s. 104 (1953). As Mr. Justice Black, writing for the U.S. Supreme Court in Adderly v. Florida,385 U.S. 39, 47-48 (1966), stated: . . . The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated . . . . The United States Constitution does not forbid a State to control the use of its own property for its own lawful nondiscriminatory purpose. The legislatively delegated power to control land owned by drainage and water management districts, s. 298.22(5), supra, and the concomitant duty of such districts as public corporations, s. 298.03(3), supra, to preserve and protect water resources, s.298.01(1), supra, would give them the power to prohibit trespass on lands owned by such districts under their general corporate powers and proprietary ownership rights in property. See 32 Fla. Jur. Trespass s. 5 (1960); 25 Fla. Jur. Property s. 14 (1959); and In re Quinn, 35 Cal.App.3d 473, 485, 110 Cal.Rptr. 881, 889 (5th Ct. App. 1973). Moreover, where a statute imposes a duty on public officials to perform a stated purpose, it also confers by implication all necessary or proper power for the complete exercise of such authority and duty not otherwise violative of law. In re Advisory Opinion to the Governor, 60 So.2d 285, 287
(Fla. 1952). The Legislature has authorized public use of property owned by certain governmental bodies. See, e.g., ss. 253.665, 372.121, 372.573, 373.139(3), and 589.26, F. S.; see also s. 11, Art. X, State Const., and ss. 253.04 and 253.05, F. S., and cf. AGO 076-37. However, there is no statutory authority providing for public use of property owned by drainage and water management districts created under Ch. 298, F. S. It would seem to be particularly appropriate that general public use of property owned by a public corporation created for limited and special purposes has not been provided for, but s. 298.76(1), F. S., does indicate that the Legislature may enact special or local laws "granting additional authority, powers, rights and privileges . . . pertaining to or affecting any drainage district heretofore or that may be hereafter created as provided for by said chapter 298."